IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00256–MSK–KMT

MARIAN G. KERNER, and
JACOBO GONZALES, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

CITY AND COUNTY OF DENVER, a municipal corporation,

     Defendant.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

     This case comes before the court on "Plaintiff's Motion for Class Certification" [Doc. No. 73] ("Mot.") together with a brief in support [Doc. No. 74] ("Mot. Br.") filed on July 13, 2012, and on the City and County of Denver ("Denver")'s "Defendant's Brief in Opposition to Class Certification" [Doc. No. 72] ("Deft. Opp. Br.") filed the same day. Defendant filed a response to the Motion on August 10, 2012 [Doc. No. 77] ("Deft. Resp.") and Plaintiffs filed a reply ("Pl. Reply") on the same date [Doc. No. 78].

     Related to the class certification issue, Plaintiffs filed their "Unopposed Motion for Leave of Court to Supplement Plaintiffs' Response Brief to Defendant's Brief in Opposition to Class Certification" [Doc. No. 80] together with an additional affidavit of Joseph Muniz [Doc. No. 80-1] ("Muniz Aff.") which was granted on August 14, 2012. Thereafter, Defendant filed a "Motion for Leave to Respond to Declaration of Joseph Muniz [Doc. No. 83] together with the

"Supplemental Affidavit of Marion Lujan" [Doc. No. 83-1] ("Lujan Aff."), the "Affidavit of Krista Judd" [Doc. No. 83-3]("Judd Aff."), and other paperwork.  Plaintiffs filed an objection to Defendant's motion [Doc. No. 85] and Defendant replied on August 28, 2012 [Doc. No. 86].  For the reasons set forth herein, this court grants Defendant's "Motion for Leave to Respond to Declaration of Joseph Muniz" and recommends that the District Court grant in part "Plaintiff's Motion for Class Certification."

Plaintiffs request that the court certify, pursuant to Fed. R. Civ. P. 23, a class action involving, "All Black applicants and Hispanic/Latino applicants for employment or promotion with the City and County of Denver who were denied employment or promotion upon failing the AccuPlacer Test between March 8, 2007 to the present or who otherwise suffered any negative employment status, decrease in pay or position, or were otherwise negatively affected by the AccuPlacer Test in its use by the City and County of Denver."  (Mot. at 2.)

The two named plaintiffs claim they were administered a test known as the AccuPlacer in order to qualify for certain job openings with Denver, and as a result of their test failure they were denied further consideration for hiring for that particular job.  Plaintiffs assert both that the AccuPlacer Test was not validated as being related to the job skills or qualifications for the positions sought and that the test discriminated against African American/Black and Hispanic/Latino applicants for employment and/or for promotion all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* (Title VII).  (*Id.*)  Further, although this assertion is not factually relevant to either named Plaintiff, they assert that "the AccuPlacer Test continues to be used by the City and County of Denver Career Counseling

2

Center which has an adverse impact on current African American/Black and Hispanic/Latino employees." (*Id.*)  They now seek to represent all other individuals who have taken the AccuPlacer Test as administered by the City and County of Denver between March 8, 2007 and present and who have been "negatively affected" as a result.

## LEGAL STANDARDS

Class certification is a matter committed to the discretion of the trial court. *Anderson v. Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982).  A certified class may be altered, expanded, subdivided, or abandoned as the case develops. *See, e.g., Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D. Colo. 1990); *Dubin v. Miller*, 132 F.R.D. 269, 270–75 (D. Colo. 1990).

Federal Rule of Civil Procedure 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).  If the requirements of Rule 23(a) are satisfied, then one of the alternative requirements outlined in Rule 23(b) also must be met.

"'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (hereinafter "*Shook I*") (quoting *Anderson*, 690 F.2d at 799).  The party seeking class

3

certification bears the burden of proving Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1194 (10th Cir. 2010); *Shook I,* 386 F.3d at 968. In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," though it "'need not blindly rely on conclusory allegations of the complaint which parrot Rule 23' and 'may consider the legal and factual issues presented by plaintiff's complaints.'" *Shook I,* 386 F.3d at 968. (quoting *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1290 n. 7 (10th Cir. 1999)); *see also Vallario v. Vandehey,* 554 F.3d 1259, 1265 (10th Cir. 2009). While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own "rigorous analysis" to ensure Rule 23's requirements are met. *DG ex rel. Stricklin* at 1194; *Vallario* at 1266–67; *Shook I,* 386 F.3d at 968.

**ANALYSIS**

**A.      *Rule 23(a)(1) - Numerosity***

Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all members of the class is impracticable. *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006). There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case and the nature of the proposed class are key considerations in determining whether joinder of all parties is not practical. *See, e.g., Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 274–76 (10th Cir. 1977).

The Plaintiffs have submitted 33 declarations of individuals who, in addition to the named Plaintiffs, claim to have been negatively impacted by failing a required AccuPlacer

4

examination pursuant to the hiring or promotion process with Denver.  (Mot. Br., Ex. 18, pp. 1-39; Pl. Reply, Ex. 1, pp. 1-18.)  Denver claims that this number is insufficient to satisfy the numerosity requirement for class action treatment.[1]  However, in considering the numerosity of the potential class, Plaintiffs assert that the true putative class size consists of at least 386 members.  (Mot. at 3.)  Plaintiffs state that information received through discovery thus far shows that

> [f]rom March 8, 2007 through March 8, 2008 a minimum of 159 African American/Black applicants took and failed the AccuPlacer Test for the position for which they were applying or seeking a promotion.  From March 8, 2007 through March 8, 2008 a minimum of 227 Hispanic/Latino applicants took and failed the AccuPlacer Test for the position for which they were applying or seeking a promotion. Therefore, the total number of potential class members (initial employment or promotions) as identified by the Defendant the City and County of Denver at this time through discovery is 386 persons."

(Mot. Br. at 7.)  The methodology employed to reach these numbers appears sound.  (*Id.*)  Additionally, Plaintiffs state, "the City and County of Denver admitted they are unable to identify all persons including African American/Blacks and Hispanic/Latinos who took the AccuPlacer Test for initial employment or who were seeking a promotion and are, therefore, putative class members."  (Mot. Br., Ex. 15, Def.'s Resp. to Pls.' 2d Req. for Admis., ¶¶ 17 and 18).  However, the court is not clear exactly what this phrase means and exactly what or who Denver cannot identify, so it is uncertain whether there would be any impact on the 386 putative class member size for the relevant one-year period.

---

[1] When Defendant's response was filed only the first 29 declarations had been filed.

Plaintiffs urge this court to also include in the putative class some 49 additional Denver employees who have taken the AccuPlacer Test through the Career Counseling Center. However, first, the 49 identified persons taking the AccuPlacer test through the Career Counseling Center did not "fail" the test as did the Plaintiffs.  (Mot. Br., Ex. 16 at 2-3.)  Marion L. Lujan, Program Manager for the Career Development Program with Denver, testified during her deposition that individuals who took the AccuPlacer Test through the Career Counseling Center took the test because they "were interested in continuing education" and "career professional development."  (Mot. Br., Ex. 14 at 22, 52.)  There was no passing or failing grade. Second, the test results were absolutely confidential and were not shared with anyone other than the test taker.  (Deft. Resp. at 2 and Ex. B at 124-125.)  For these reasons, as well as others as set forth more particularly in Section B herein, the court does not include the 49 AccuPlacer test takers through the Career Counseling Center in the putative class members total.

Nevertheless, this court finds that a potential 386 member putative class satisfies the numerosity requirements for a class action since joining this many plaintiffs is certainly impractical.  Therefore, this court finds Plaintiffs have successfully met this prong of the analysis.

### B.    *Rule 23(a)(2) - Common Questions of Law or Fact*

Rule 23(a)(2) requires that the claims of members of a proposed class present common questions of law or fact.  Complete identity of legal claims among class members is not required. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).  Mere allegations of systemic violations of the law, however, will not automatically satisfy Rule 23(a)'s commonality

6

requirement; a discrete legal or factual question common to the class must exist. *Id.; DG ex rel. Stricklin*, 594 F.3d at 1195. As the Supreme Court recently reaffirmed in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541(2011),

> [c]ommonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *[General Telephone Co. of Southwest v.] Falcon, supra*, at 157, 102 S. Ct. 2364. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company.

*Dukes*, 131 S. Ct. at 2551 (quoting *Falcon,* 457 U.S. 147, 157 (1982)). In *Dukes* the Court explained that the class members' claim must depend upon a "common contention." Explaining the term "common contention" the Court said, "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The court continued

> *Falcon* suggested two ways in which that conceptual gap might be bridged. First, if the employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)."

*Id.* at 2553 (quoting *Falcon,* 457 U.S. at 159 n.15).

Further, every member of a proposed class need not be in a situation identical to that of the named plaintiff to meet Rule 23(a)'s commonality or typicality requirements. *Milonas,* 691 F.2d at 938. Factual differences between class members' claims do not defeat certification where common questions of law exist. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189

7

(10th Cir.1975).  A finding of commonality actually *requires* only a single question of law or fact common to the entire class.  *J.B. ex rel Hart*, 186 F.3d at 1288.  As noted by the Supreme Court, "suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs," and common questions of law or fact are typically present. *Falcon,* 457 U.S. at 157.  By the same token, however, the Supreme Court reiterated that "careful attention to the requirements of Fed. Rule Civ. Proc. 23 remains nonetheless indispensable and [] the mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *Id.* (internal quotations omitted.)

Denver concedes that each of the 33 Declarants brought forth by Plaintiffs has in common the fact that he or she did not receive a passing score on an AccuPlacer test that Denver required them to take and pass in order to proceed along the hiring continuum.[2]  (Deft. Resp. at 3.)  The concession that these 33 Declarants "did not receive a passing score" implicitly means Denver also concedes that the test could be failed, was failed by the Declarants, and that failure was relevant to whether or not they were allowed to continue to press their application forward. Plaintiffs allege that the use of the AccuPlacer test had an adverse impact upon African American/Black and Hispanic/Latino test takers that was statistically relevant in disqualifying the Declarants and other putative class members from the employment for which they applied.

---

[2] Denver apparently also does not dispute – at least at this juncture – that the declarants are members of protected classes for Title VII purposes as they so state in their declarations.

For purposes of analyzing class certification, this court treats these foregoing allegations as true. *J.B. ex rel Hart*, 186 F.3d at 1290, n.7.

In both *Dukes* and *Falcon*, the Supreme Court specifically reaffirmed the propriety of class action certification in employment cases where the employer had used a "biased testing procedure" to screen new applicants for employment and existing employees for promotion. *See Dukes,* 131 S.Ct. at 2553. An alleged biased testing procedure is precisely what is at issue in the instant case. The primary contention common to all members of the class is whether the AccuPlacer Test was in fact biased and discriminatory against two protected classes of persons in violation of Title VII. Therefore, this court concludes that the Plaintiffs have met the commonality requirement with respect to that category of individuals who were required to take the AccuPlacer test either as part of an initial hiring procedure or to receive promotion.

This commonality ceases, however, with respect to Denver employees who voluntarily took the AccuPlacer test through the Career Counseling Center. Plaintiffs have been able to identify only one person, former Denver employee Joseph Muniz, who claims to have suffered a "negative impact" as a result of taking the AccuPlacer test through the Career Counseling Center.[3]

---

[3] The Defendant refutes the veracity of Mr. Muniz and has presented the court with evidence through the affidavits of Marion Lujan, the Program Manager for the Career Development Program, and Krista Judd, Human Resources Professional with Denver's Career Service Authority, that Muniz' Declaration was untruthful. [Doc. No. 83, Exs. 1 and 3.] The court has considered the Muniz Declaration as well as the Affidavits submitted by Defendant in light of the restraint cautioned by *Shook I,* 386 F.3d at 968 and *J.B. ex rel. Hart*, 186 F.3d at 1290 n.7. However, whether or not Mr. Muniz was on the eve of termination when he abruptly left Denver's employment is largely irrelevant to the class certification consideration.

9

While an employee of Denver, Mr. Muniz claims he voluntarily went to the Career Counseling Center "to get help to become a supervisor or to obtain a better position." (Muniz Decl. at ¶ 13.) At the time he went to the Career Counseling Center he had been rejected for a supervisory position but was not currently applying for a specifically available job. (Muniz Decl. at ¶¶ 5 and 6.) Individual employees voluntarily presenting themselves to the Career Counseling Center are sometimes given the AccuPlacer test as a way to assess an individual's reading, writing and math skill levels to help counselors develop a personalized career development strategy, which might include possible continuing education. (Deft. Opp. Br., Ex. G, Affidavit of Marion Lujan, ¶¶ 4-6, & Ex. H, Lujan Dep., at 22.) It is uncontested that the test has been validated for determining educational placement.[4] (Resp. at 2.) Mr. Muniz claims the test noted certain deficiencies in tested areas, but Mr. Muniz did not "fail" the test as it was used only as a self-assessment tool and there was nothing to "pass" or "fail." Further, Mr. Muniz claims no adverse employment consequences from taking the AccuPlacer test; rather, he maintains he was personally "discouraged" about his chances for being promoted while employed by Denver, although it is not clear that he ever sought promotion after having taken the test. (Muniz Decl. at ¶ 8.) Feeling "discouraged" about the result of a test not shared with

---

[4]Ms. Lujan testified during her deposition that the AccuPlacer test must be taken before any student at the community colleges would be enrolled. This was so the college could place people "in appropriate courses and not set [them] up for failure." (D. Resp., [Doc. No. 79-exhibits] Ex. B at 197.) By voluntarily taking the test at the Career Counseling Center, a Denver employee who wanted to go back to school at a community college could save the five dollar fee charged by the colleges for administering the same test. (*Id.* at 36-39, 107-108, 196.)

any person in the workplace except the test-taker does not support any conceivable violation of Title VII.  Mr. Muniz's claim that use of the AccuPlacer test "made me feel like I could never obtain a promotion or obtain a different position" (*id.* at ¶15) reflect his personal feelings of inadequacy based upon his test results in contrast to individuals who were <u>required</u> to take the AccuPlacer test and obtain a certain grade in order to continue with the hiring process or to be promoted to certain positions.  In fact, Mr. Muniz himself did not blame his AccuPlacer test scores for his failure to promote to a supervisory position, stating, "[w]ith the City and County of Denver it was all about who you know for you to obtain a better position."  (*Id.* at ¶12.)   The two situations are neither comparable nor analogous.

Even if the facts in his Declaration are accepted as true, Mr. Muniz is not similarly situated to the currently named plaintiffs and there are not common questions of law or fact uniting the named plaintiffs and Mr. Muniz.  Therefore, this court finds that persons who voluntarily took the AccuPlacer test at Denver's Career Counseling Center do not present common questions of law or fact with the named plaintiffs or other putative class members and should not be certified as members of that class.

### C.    *Rule 23(a)(3) - Typicality*

Rule 23(a)(3) requires the claims of the named plaintiffs to be typical of the claims of the class they seek to represent.  Again, the interests and claims of named plaintiffs and class members need not be identical to satisfy typicality.  *Anderson*, 690 F.2d at 800.  Provided the claims of named plaintiffs and class members are based on the same legal or remedial theory,

differing fact situations of the class members do not defeat typicality.  *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class.  *See, e.g., Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  In fact, the Tenth Circuit has held that the typicality requirement is usually satisfied if there are common questions of law or fact.  *Milonas*, 691 F.2d at 938; *Adamson*, 855 F.2d at 676.  So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied.  *Cook v. Rockwell Intern. Corp.*, 151 F.R.D. 378, 385 (D. Colo. 1993)..

Each of the 386 putative class members, not including voluntary test-takers at the Career Counseling Center, was allegedly injured by Denver's required use of the allegedly racially-biased AccuPlacer test and Denver's mandate that applicants achieve a passing grade to be considered for employment or promotion.  Because each putative class member failed the required AccuPlacer test, each person was denied a chance at employment or promotion.  Therefore, as to those 386 potential class members, the typicality prong of the analysis has been satisfied.

For all the reasons set forth herein, including more specifically in section B, this court finds that the individuals who took the AccuPlacer test at the Career Counsel Center do <u>not</u> have typicality of interest with the named Plaintiffs and should not be considered members of the putative class.

### D.        *Rule 23(a)(4) - Adequate Representation*

Rule 23(a)(4) requires that a proposed class representative adequately protect the

interests of the class as a whole.

> Resolution of two questions determines legal adequacy: (1) do the named
> plaintiffs and their counsel have any conflicts of interest with other class members
> and (2) will the named plaintiffs and their counsel prosecute the action vigorously
> on behalf of the class?

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002); *see also*

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) ("The adequacy heading also

factors in competency and conflicts of class counsel.").  The Rule's requirement is intended to

ensure that a class representative has sufficient interests in common with the class that the

representative adequately will assert and protect the interests of all the members of the class, not

just his or her own stake.  Rule 23(a)(4) concerns both the competence of the class

representative's counsel, and the representatives' willingness and ability to control the litigation

and to protect the interests of the class as a whole. *See, e.g., Horton v. Goose Creek Independent*

*School District*, 690 F.2d 470, 484 (5th Cir. 1982).

In a sense, a complaint containing allegations of class-wide conduct may be considered

akin to an offer by the named plaintiff to act as a representative for the members of the class; that

offer may be accepted by the court in a certification order.  *Deposit Guaranty Nat. Bank,*

*Jackson, Miss. v. Roper*, 445 U.S. 326, 340, n.12 (1980); *In re Fine Paper Litigation State of*

*Wash.*, 632 F.2d 1081, 1086-87 (3d Cir. 1980).  As artfully stated by a Minnesota District Court

> When a class-action complaint is filed, the named plaintiff, as the putative class
> representative, takes on a special role with duties not typically borne by the

13

> ordinary plaintiff who is merely pursuing his own claim. A class-action complaint seeks relief for an entire class of persons and, from the moment the class action is commenced, the named plaintiff operates in a representative capacity for the class.

*Johnson v. U.S. Bank Nat. Ass'n*, Case No. 10-4880 (MJD/JJK), 2011 WL 2619619, at *2 (D. Minn. June 29, 2011).  Prior to certification of a class the putative representative has already alleged that he or she is willing to protect the interests of the class, and therefore the proposed representative's pre-certification conduct may be relevant to the court's determination whether that named plaintiff has the personal characteristics and integrity necessary to fulfill the fiduciary role of a certified class representative.  1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:27 (8th ed.) § 4:27 (database updated November 2011).

### 1.     *Class Representatives*

Defendant objects to the two named class representatives for different reasons.  First Denver maintains that Plaintiff Kerner retook the AccuPlacer test after her initial failure, received a passing score and was then hired by Denver.[5]  (D. Opp. Br. at 14.)  Defendant argues that because of this employment, she has a conflict with those who applied and were never hired. This court does not agree.  The only difference between Ms. Kerner and those who were not hired will be in the calculation of damages.  Since all the putative class members are likely to have different damages in any event, this fact does not disqualify Ms. Kerner from acting as a class representative.  Further, Ms. Kerner has affirmatively demonstrated that she will actively

---

[5] Plaintiff Kerner took and passed the AccuPlacer test approximately ninety days after her initial failure on March 8, 2007.

Case 1:11-cv-00256-MSK-KMT   Document 87   Filed 11/30/12   USDC Colorado   Page 15 of 27

prosecute the case by continuing to pursue her EEOC charge on behalf of herself and the class,

even after she eventual passed the AccuPlacer test and became an employee of Denver.  (Mot.

Br., Ex. 6.)

Second, Denver argues that Plaintiff Gonzales did not file a charge of discrimination with

any federal or state agency and that his failure to do so bars him from representative status.  (D.

Opp. Br. at 14.)  Plaintiff Kerner, as noted however, has alleged exhaustion of class

administrative remedies through the EEOC on behalf of the whole class and therefore each

member is not required to exhibit individual exhaustion.  *See Gulley v. Orr*, 905 F.2d 1383, 1384

-1385 (10th Cir. 1990).

Furthermore, Defendant attacks Plaintiff Gonzales' adequacy as a class representative

alleging that "during his deposition Plaintiff misrepresented his work history during 2007 and

2008, presumably to inflate his damages calculation."  (D. Opp. Br. at 14.)  As one court has

held

> The named plaintiffs in a class action need not be the best representatives of the
> class, and to say that they are not expected to understand every detail of their case
> is to understate the matter. Still, they must be able, at minimum, to make
> important nondelegable decisions about the course of the litigation; also, if the
> named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily
> against them as adequate class representatives.

*Smyth v. Carter,* 168 F.R.D. 28, 33 (W.D. Va. 1996).  The allegations against Mr. Gonzales are

that he attempted to aggrandize his damages, presumably by not revealing other mitigating

employment during the damages period.  Courts have denied class certification based on the lack

of credibility of the purported representatives where the purported representatives "are so

15

lacking in credibility that they are likely to harm their case." *In re Frontier Ins. Group, Inc. Securities Litigation*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997). *See Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010) (courts may properly consider a plaintiff's personal qualities when deciding if he is a proper class representative; however, the inquiry is not an examination into their moral righteousness, but rather is directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit); *Searcy v. eFunds Corp.*, Case No. 08 C 985, 2010 WL 1337684, *5 (N.D. Ill. March 31, 2010). Even if Defendant is correct about Mr. Gonzales's misrepresentations, these statements go only to the more individualized issue of damages accruing to prevailing class members and would not harm the liability phase of the case to the detriment of the other class members. Therefore, even assuming that Plaintiff Gonzales was less than veracious regarding his work history after failing the AccuPlacer test, this alone will not disqualify him as an adequate class representative. The court finds that the two named plaintiffs do not have any conflicts of interest with other class members and therefore are adequate representatives of the class.

As must be anticipated, this court finds that neither of the two named plaintiffs and proposed class representatives adequately represent the interests, if any, of persons taking the AccuPlacer test as part of their voluntary use of the Career Counseling Center. Therefore as to that group of individuals, Plaintiffs have not met the adequacy of representation prong of a Rule 23 analysis.

16

### 2.     Class Counsel

The legal qualifications of Kenneth A. Padilla, proposed lead class counsel, are set forth

in Plaintiff's Brief supporting the motion for class certification and attested to by the affidavits

of two well-known and respected members of the Colorado bar.  (Mot. Br. 24-25; Reply, Ex. 4

and 5.)  Mr. Padilla has already devoted considerable time and expertise to this case as is

evidenced by the thirty-three Declarations of potential class members, the entry of a Protective

Order [Doc. No. 63], and the handling of numerous motions both contested and stipulated.  Mr.

Padilla is well-known to this court as a vigorous litigant.  He has participated in many civil rights

cases in this District, particularly involving governmental agencies.  This, together with his

tenacious litigation style has no doubt dampened his popularity with the Defendant; however, his

adequacy as class counsel cannot be seriously questioned.  Further, co-counsel on the case, John

Mosby, is also well-known to this court and is an attorney of considerable experience in civil

rights litigation.

This court finds that Plaintiffs have met the requirements of adequacy of class

representatives and class counsel as required by Fed. R. Civ. P. 23(a)(4) for the class:

> African-American/Black applicants and Hispanic/Latino applicants for
> employment or promotion with the City and County of Denver who were denied
> employment or promotion upon failing the AccuPlacer Test between March 8,
> 2007 to the present.

### E.     Rule 23(b)(3)

Plaintiffs seek class certification under Rule 23(b)(3), which provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if
the prerequisites of subdivision (a) are satisfied, and in addition:

* * *

>(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* As the Supreme Court has recently held with respect to class actions in the employment context, Rule 23(b)(3),

>allows class certification in a much wider set of circumstances but with greater procedural protections. Its only prerequisites are that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled to receive "the best notice that is practicable under the circumstances" and to withdraw from the class at their option.

*Dukes*, 131 S. Ct. at 2558.

### 1.    *Predominance*

Predominance is a higher standard than that required by Rule 23(a)'s commonality requirement. *Amchem Prods.*, 521 U.S. at 623-24 (describing the predominance criterion of Rule 23(b)(3) as "far more demanding" than Rule 23(a)'s commonality requirement); *Monreal v. Potter*, 367 F.3d 1224, 1237 (10th Cir. 2004). At the heart of most cases dealing with predominance is whether Plaintiffs have "identified any specific policy of the Defendant

purportedly responsible for the alleged discrimination." *Amchem Prods.*, 521 U.S. at 623-24. Obviously, this question is answered affirmatively here. Denver had a policy of administering the AccuPlacer test to all individuals applying for employment and/or promotion to certain positions[6] and requiring a "passing score"[7] before further consideration would be given to their application. Plaintiffs maintain that requiring a certain score on a test which is racially-biased against African-American/Black or Hispanic/Latinos had an invidious and racially discriminatory affect upon the composition of the work force within Denver and violated the civil rights of the failing test-takers. Further, Plaintiffs have established that this was a common policy that was applied to the entire class in the same way notwithstanding that a "passing score" was not always the same grade number. Plaintiffs allege that African-American/Black and Hispanic/Latino test takers were eliminated in greater proportion than their white counterparts.

In short, should the AccuPlacer test, when administered for purposes of hiring and promotion within Denver, be found to have had a statistically relevant adverse impact upon one or both of the protected groups in violation of Title VII, all the class members prevail; the only remaining issue would be an individual calculation of damages. Should the test be found not to

---

[6] It does not appear that Denver administered the AccuPlacer test to all persons seeking promotion to <u>all</u> positions. However, this distinction is unimportant to the analysis for this case because the proposed class consists of only applicants where successful completion of the AccuPlacer test was required.

[7] The scores required to "pass" the AccuPlacer test for various jobs were not always the same, depending on the position sought.

violate federal law, all class members' claims are defeated.  This issue clearly predominates over all others.

Further, the factual underpinnings for each of the class members is the same:  1) Are you African-American/Black or Hispanic/Latino?  2) Did you apply for employment or promotion with the City and County of Denver between March 8, 2007 and March 8, 2008?  3) Were you required to take an AccuPlacer test and achieve a certain score in order to be further considered for hiring or promotion?  4) Did you attain the score you needed to progress?  5) If not, were you allowed to further compete for the job?

Denver argues that because there was no guarantee of a job or a promotion for any applicant even if they successfully passed the AccuPlacer test, each class member would be entitled to a "mini-trial" concerning damages which would be far more extensive that the initial liability determination and posits the argument that individual damage calculations actually predominate over the liability determination.  Although significant adjudicative time may be spent on the individual damages, that does not assuage or negate the predominance of a single policy or practice which was in force during the relevant time period which the Plaintiffs allege was racially discriminatory.

Therefore I find that Plaintiffs have alleged the predominance of a policy, practice or pattern of discrimination common to all the putative class members to warrant class treatment.

### 2.    *Superiority*

A class action must represent the best available method for the fair and efficient adjudication of the controversy.  *Newton v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 259 F.

3d 154, 151 (3rd Cir. 2001).  "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'"  *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03, 406 n. 11 (1980)) (internal citations omitted.)

It is here that Defendant finally gains some traction with its argument that multiple trials within the trial will be necessary for class members to ascertain individual damages should they prevail on the predominating issue in the case – the discriminatory effect, if any, of the AccuPlacer test when administered mandatorily in connection with hiring and promotion.

It would admittedly pose a much easier question for the court if the relief the Plaintiffs sought was merely injunctive, requiring Denver to cease making passing the test a prerequisite for hiring or promotional consideration.  But as to this class of litigants, injunctive relief is of no value since Denver stopped administering the AccuPlacer tests in connection with hiring or promotion decisions when the EEOC issued its determination in Ms. Kerner's matter.  (Mot. Br. at 5, n. 1)

Defendant has drawn the court's attention to cases where claims for compensatory damages unique to each individual greatly complicate management of a class and defeat the superiority of a class action as the best way to manage the Plaintiff group.  *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 163 (D. Kan. 1996) (citing *Williams v. Owens-Illinois, Inc.*, 665 F. 2d 918, 928-929 (9th Cir. 1982)); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007) (superiority requirement not met where individual issues will predominate); *Doe v. Guardian Life*

*Ins. Co. of America*, 145 F.R.D. 466, 476 (N.D. Ill. 1992) (same).  Defendant argues that "[i]ndividual liability and damage claims would far outweigh the time spent to establish that potential plaintiffs failed to get passing scores on the AccuPlacer test and were therefore not allowed to proceed to the next step of the hiring process."  (Deft. Resp. at 11.)  However, what is absent from Defendant's analysis is an alternative preferable method of addressing the wrongs alleged in the complaint.  Therefore, the court must presume that Defendant's preferred method would be individual lawsuits filed by each member of the class which would obviously still require individual damages calculations should any plaintiff prevail but at the same time incurring the new risk of inconsistent verdicts and the potential for even more litigation.

In seeking to determine class members' probable interest in pursuing individual litigation, one of the most compelling rationales for finding superiority in a class action is the existence of a negative value suit. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985).  *See also Amchem Prods.*, 521 U.S. at 617 (noting that, in enacting Rule 23(b)(3), the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1270-1271 (11th Cir. 2004).  A negative value claim is one in which the expense of pursuing relief on an individual basis would likely exceed the expected individual recovery.  *See e.g., Amchem Prods.*, 521 U.S. at 620.  The negative value consideration "applies in situations where . . . the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually."  *Klay,* 382 F.3d at 1271.  As the Supreme Court recently emphasized:

22

> The policy at the very core of the class action mechanism is to overcome the
> problem that small recoveries do not provide the incentive for any individual to
> bring a solo action prosecuting his or her rights. A class action solves this problem
> by aggregating the relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 620 (*citing Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th

Cir. 1997)).  That at least one of the two named plaintiffs in the instant action appears to be

seeking an unreasonable recovery does not color this court's conclusion that damages in a case

such as this are likely to be significantly less than the amounts now claimed, rendering the case

one of negative value when attorney's fees and costs are calculated into any recovery.

This court recognizes the challenge of calculating individual compensatory damages in a

class action such as this – especially in light of the undisputed fact that failure on the AccuPlacer

test took the individual out of competition for the position sought, but "passing" the same test in

no way guaranteed the individual would actually be offered the position.   However, this problem

is not actually ameliorated by requiring individual suits.  Rather, Defendant appears to be relying

upon the unstated reality that people who may have been wronged by the process now challenged

by Plaintiffs will simply not discover their potential lawsuit and would be likely to be time and

administratively barred from bringing a suit even if they knew to do so.  Arguably, the court and

Defendant would be relieved of the burden of calculating damages strictly because individual

potential plaintiffs are ignorant that their rights may have been violated.  Basing a finding of lack

of superiority on this basis would be to annihilate the most basic principles of justice.

This court therefore agrees with the holding in *Klay* and *Amchem Prods.* that merely because the calculation of damages may require some effort, this alone does not negate the superiority of a class action when all other factors in the analysis favor treating a group as a class.

### F.     Rule 23(b)(2)

Plaintiffs seek class certification under Rule 23(b)(2) for the purpose of enjoining Denver from using the AccuPlacer Test for any purpose, including its continued use by the Defendant Denver Career Counseling Center.  (Pl. Reply at 17.)

The Tenth Circuit has held that in order to satisfy the burden associated with certification under Rule 23(b)(2), plaintiffs must first illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction state its terms specifically; and describe in reasonable detail the act or acts restrained or required and that class members' injuries be sufficiently similar that they can be remedied in a single injunction without differentiating between class members.  *DG ex rel. Stricklin,* 594 F.3d at 1199 -1200 (internal quotations omitted).  *See also Monreal*, 367 F.3d at 1236.  The Plaintiffs herein have establish none of these criteria.

First, as noted above, it is not seriously disputed that Denver stopped administering the AccuPlacer test for hiring and promotional reasons.  (Mot. Br. at 5 n.1.)  Otherwise, as noted throughout this Recommendation, individual employees using the Career Counseling Center at Denver are: voluntarily taking the AccuPlacer test as a validated placement mechanism, sometimes to establish areas where additional education might be helpful to the employee; do so to receive feedback on any deficiencies or areas where they could improve; receive confidential results when

24

the test is administered; are not placed or hired for employment purposes based on their score on the test; and may receive a benefit from the test because community colleges charge $5 to take the test whereas Denver employees can have the test administered for free and can voluntarily submit the test to an institution of higher learning for placement if they choose.  These circumstances are inapposite to those of the named plaintiffs and simply not typical of the remainder of the class.

For all the reasons set forth in this Recommendation, this court finds that Plaintiffs have not set forth any grounds for class action certification for a class which would include persons who have voluntarily taken the AccuPlacer test through the Career Counseling Center for purposes of self-improvement, as exemplified by Plaintiff's sole identified potential class member, Joseph Muniz.  Since the Plaintiffs have failed to meet the requirements of Rule 23(a) as to this group, they cannot bring suit under Rule 23(b)(2).

WHEREFORE, for the foregoing reasons,

It is **ORDERED**

Defendant's "Motion for Leave to Respond to Declaration of Joseph Muniz [Doc. No. 83] is **GRANTED**.

Further, I respectfully

**RECOMMEND** that

"Plaintiff's Motion for Class Certification" [Doc. No. 73] be **GRANTED in part** and that

the following class be certified pursuant to Fed. R. Civ. P. 23(a) and (b)(3)

> **African-American/Black applicants and Hispanic/Latino applicants for employment or promotion with the City and County of Denver who were denied employment or promotion upon failing the AccuPlacer Test between March 8, 2007 to the present**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve

and file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that

does not put the district court on notice of the basis for the objection will not preserve the

objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121*

*East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the district judge of the magistrate judge's proposed

findings and recommendations and will result in a waiver of the right to appeal from a judgment of

the district court based on the proposed findings and recommendations of the magistrate judge.

*See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a

magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude

application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of November, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge