**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-00256-MSK-KMT**

**MARIAN G. KERNER; and
JACOBO GONZALES, on behalf of themselves and all others similarly situated,**

   Plaintiff,

v.

**CITY AND COUNTY OF DENVER,**

   Defendant.

_____

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
RECOMMENDATION AND GRANTING IN PART MOTION TO CERTIFY CLASS**
_____

**THIS MATTER** comes before the Court pursuant to Defendant's Objections **(# 89)** to the Magistrate Judge's November 30, 2012 Recommendation **(# 87)** that the Plaintiffs' Motion for Class Certification be granted in part, the Plaintiffs' response **(# 94)**, and the Defendant's reply **(# 97)**; and the Plaintiffs' Objections **(# 90)** to that Recommendation, the Defendant's response **(# 93)**, and the Plaintiffs' reply **(# 98)**.

**FACTS**

According to the Amended Complaint **(# 26)**, between January 2005 and February 2008, the Career Service Authority ("CSA") for the City and County of Denver ("Denver"), administered a test called the AccuPlacer/WritePlacer ("the test") to "establish eligibility lists for persons seeking employment" with Denver. The Plaintiffs claim that the test was not designed or validated for employment testing or screening and that it has a disparate impact on black and

1

Hispanic applicants, who fail the test with greater frequency than members of other racial and ethnic groups. They assert two claims, one sounding in disparate impact in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and one sounding in intentional discrimination in violation of Title VII.

The Plaintiffs have moved **(# 73)** to certify the matter as a class action pursuant to Fed. R. Civ. P. 23, consisting of a class of individuals defined as "All black applicants and hispanic/latino applicants for employment or promotion with [Denver] who were denied employment or promotion upon failing the AccuPlacer Test between March 8, 2007 and the present or who otherwise suffered any negative employment status . . . or were otherwise negatively affected by the AccuPlacer Test in its use by [Denver]."

The Court referred the motion to the Magistrate Judge and on November 30, 2012, the Magistrate Judge issued a thorough and well-reasoned Recommendation **(# 87)** that the motion be granted and part and denied in part. Specifically, the Magistrate Judge found : (i) that the Plaintiffs met the numerousity requirement, insofar as although they only produced declarations from 33 putative class members claiming to have been adversely affected by the test, discovery indicated that there were potentially 386 potential class members (but not including 49 persons who took the test only as part of career counseling services, and thus, did not "fail" it or suffer adverse employment actions as a result); (ii) that there is a common question of law as to whether the test was biased and discriminatory; (iii) that the named Plaintiffs were typical of the class members as it related to the common question; (iv) that the named Plaintiffs and Plaintiffs' counsel would adequately represent the class; (v) that as to Rule 23(b)(3), that the common questions of law (and fact) among class members predominate over individualized

2

determinations that would be required; (vi) that although the need for individualized determination of damages will be burdensome, a class action is nevertheless superior to other procedural methods for addressing the issues; but (vii) that certification of a class for injunctive relief under Rule 23(b)(2) was not appropriate, as Denver is admittedly no longer using the test for employment decisions.

Both sides filed timely Objections **(# 89, 90)** to the Recommendation.  Denver's Objections argue: (i) the Magistrate Judge erred in finding sufficient numerousity given that the Plaintiffs have submitted only 33 declarations from potential class members; (ii) the Magistrate Judge erred in finding that the named Plaintiffs would be adequate class representatives due to Ms. Kerner having re-taken (and passed) the test and thus having gained employment with the City and due to Mr. Gonzalez having made false statements in his deposition about his efforts to mitigate his damages; (iii) the Magistrate Judge erred in finding that common issues predominated over individualized ones, insofar as each class member will have to show, individually, that they would have received a job had they passed the test; and (iv) the Magistrate Judge erred in considering the claims here to be a type of "negative value" case (*i.e.* one with low potential for individual damages creating a disincentive for bringing individualized claims), when, in fact, the two named Plaintiffs are asserting claims for considerable damages.

The Plaintiffs' Objections argue that the Magistrate Judge erred in finding that the class should exclude individuals who took the test only as part of career counseling services offered by Denver, insofar as such services may have "discourage[d] employees from seeking promotions or supervisory positions" if they failed the test in counseling sessions.

## ANALYSIS

### A. Standard of review

The Court reviews objected-to portions of a Recommendation *de novo*. Fed. R. Civ. P. 72(b).

### B. Denver's Objections

#### 1. Numerousity

Denver argues that the Court should find insufficient numerousity here because only 33 potential class members have submitted declarations in this case, and that, as a matter of law, 33 persons is insufficient to meet Rule 23's numerousity requirement. Denver does not address, in any way, the Magistrate Judge's finding that a "methodology [that] appears sound" concluded that there were at least 386 potential class members arising out of the period from March 2007-2008 alone, nor the sufficiency of the Magistrate Judge's determination that a class of 386 potential members (or more) was sufficiently numerous.

Denver offers no particular explanation as to why the Court should assume that the scope of the proposed class should be limited to those persons for whom the Plaintiffs had been able to already secure declarations. Class actions typically expand the universe of participating class members beyond known individuals after certification has been granted and notice has been sent out to all potential class members; it is only at this point that many putative class members even learn about (or decide to pay attention to) the litigation that is proceeding on their behalf. Thus, purporting to measure a class' size by the number of declarations submitted during the certification phase seems particularly unsound.

The Court agrees with the Magistrate Judge that a proper estimation of the size of the class is that in the 2007-2008 period alone, potentially 386 class members existed. In such circumstances, Denver does not dispute that the numerousity element would be satisfied. The Court, upon *de novo* review, reaches the same conclusion on this point as did the Magistrate Judge, and for the same reasons.

2. Adequacy

Denver contends that the named Plaintiffs would serve as inadequate class representatives for various reasons. The Court notes that the Magistrate Judge expressly considered and rejected these same arguments in the Recommendation. Upon *de novo* review, this Court finds the arguments no more persuasive than did the Magistrate Judge. The Court sees no meaningful conflict arising out of Ms. Kerner's hiring by Denver that would preclude her from seeking damages on behalf of non-hired class members; a finding in the Plaintiffs' favor on the merits would not displace Ms. Kerner or otherwise implicate her ongoing employment with Denver. Moreover, the Court sees no relevance, at least for class certification purposes, from the possibility that Mr. Gonzales may have been less than forthright during his deposition. The issues common to the class – *e.g.* Denver's use of the test, the test's bias, and the business necessity of such a test -- are not matters for which the Plaintiffs will have to rely on Mr. Gonzales' testimony to establish. Thus, Mr. Gonzales' credibility, or lack thereof, is not an issue that could adversely impact the class. Accordingly, the Court overrules Denver's objections on this point.

3. Predominance

Under Rule 23(b)(3), a class can only be certified that "questions common to class members predominate over any questions affecting only individual members." Denver argues that, because each individual member must individually prove that they would have been hired had they passed the test, those individualized questions of causation predominate over questions common to the class.

The Magistrate Judge acknowledged that this was a difficult question, as "significant adjudicative time may be spent on individual damages," but ultimately concluded that such individualized questions did not predominate over the common questions of law and fact. This Court agrees. In any class action, there will be some class members whose claims for individualized damages are stronger or weaker than others, and there may often be considerable obstacles to those individuals proving such damages. Nevertheless, that fact that individualized damages must be calculated, or even that such individual determinations raise additional issues of concern, does not defeat class certification where the common issues of law and fact are broad and substantial. *See e.g. In re Thornbug Mortg. Inc. Securities Litig.*, ___ F.Supp.2d ___, 2012 WL 6004176 (D.N.M. Nov. 26, 2012) (slip op.).

Denver's reliance on this Court's recent decision in *Folks v. State Farm Mut. Auto. Ins. Co.*, 281 F.R.D. 608, 619 (D.Colo. 2012), overlooks a key distinguishing factor in that case: there, the common questions had already been "exhaustively litigated" and the defendant had "essentially conceded liability" on the substantive claim, leaving individualized damage determinations as the only matter remaining. Were Denver to concede that the test had a disparate impact on blacks and hispanics, this Court might very well follow *Folks* and deny class

6

certification, as the only remaining questions would be individualized damage determinations. But the Court understands that Denver intends to dispute the substance of the Plaintiffs' disparate impact claim, and, as a result, common questions of fact and law relating to that substantive claim predominate over individual damage issues.

    4. <u>Superiority</u>

The final inquiry into whether to certify a class under Rule 23(b)(3) considers whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."

Denver's argument on this point is limited to the contention that the Magistrate Judge erred in considering this to be a "negative value" case – that is, one in which "the expense of pursuing relief on an individual basis would likely exceed the expected individual recovery." In other words, Denver does not argue that a particular alternative vehicle would allow the case to be resolved more fairly and efficiently than a class action.

The Court disagrees with Denver that this is not a "negative value" case. Disparate impact claims are different from ordinary disparate treatment claims, where establishing a claim often involves little more than telling the story of what happened. Disparate impact claims usually turn on complex statistical proof gathered across a large population of employees, and, where the claim implicates employer testing, extensive validity studies. *See Solo Cup. Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1188 (7th Cir. 1980) ("statistical proofs in disparate impact actions, most particularly those involving employment testing, have become increasingly complex and employers now often retain batteries of experts to validate their selection criteria"); *see e.g. Bazile v. City of Houston*, 858 F.Supp.2d 718, 725-728 (S.D.Tx. 2012) (discussing the

issues of proof in disparate impact case involving employment testing).  Marshaling the resources and proof necessary to bring such a claim on behalf of any one individual employee is a formidable task, both in terms of time and effort.  Thus, these types of cases are far more amenable to class certification than ordinary discrimination claims.

Moreover, the Court finds the record insufficient to support Denver's suggestion that this case presents the potential for "large individual damage claims" by each class member. Denver's objections belie some skepticism as to whether either of the named Plaintiffs can recover the sums they claimed in their depositions ($1.5 million by Ms. Kerner, and $200,000 by Mr. Gonzales), and the Magistrate Judge appeared to share that skepticism, noting that "at least one of the two named plaintiffs in the instant action appears to be seeking an unreasonable recovery."  It is highly likely that some, perhaps even many, of the class members will be unable to prove that they suffered any injury, as they will be unable to prove that they would likely have been awarded a job but for the fact that they failed the test.  Others may have only limited monetary damages, owing to successful mitigation efforts or the fact that they sought only part-time or seasonal work with Denver (as Ms. Kerner was).  Under these circumstances, the Court finds no reason to disagree with the Magistrate Judge's designation of the claims here as presenting a type of "negative value" case, nor her conclusion that the Plaintiffs had met the superiority requirement of Rule 23(b)(3).

Accordingly, the Court overrules Denver's Objections and adopts the Recommendation that the motion to certify the class be granted.

### C. Plaintiffs' Objections

The Plaintiffs' objections are limited to challenging that portion of the Recommendation in which the Magistrate Judge concluded that the class should not include those whose involvement with the test was limited to career counseling services provided by Denver, where the test was administered as an assessment tool, rather than a screening one.

The Court need not address these objections in detail. Having reviewed the Plaintiffs' arguments and supporting authority, this Court agrees with the Magistrate Judge that there are far fewer common questions of fact or law in claims arising out of the use of the test as a career assessment tool. Among other things, the Court notes that questions of how the test was used and the effect that it may have on employees in the assessment context are not necessarily uniform, as they are in the screening context. In such circumstances, the Magistrate Judge's conclusion that certification of a class including employees who took the test as part of career services assessment was inappropriate was correct.

## CONCLUSION

For the foregoing reasons, both sides' Objections **(# 89, 90)** are **OVERRULED**. The Court **ADOPTS** the Recommendation **(# 87)** in its entirety. The Plaintiffs' Motion for Class Certification **(# 73)** is **GRANTED IN PART** and **DENIED IN PART**. Pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (c)(1)(B), the Court certifies a class in this action, consisting of "African-American/Black applicants and Hispanic/Latino applicants for employment or promotion with the City and County of Denver who were denied employment or promotion upon failing the AccuPlacer test between March 8, 2007 and the present." Pursuant to Rule 23(c)(1)(B) and (g), the Court appoints Ms. Kerner and Mr. Gonzales as class representatives and appoints Mr.

Padilla as class counsel.  Within 21 days of this Order, the Plaintiffs shall move for approval of a plan for giving notice to the class pursuant to Rule 23(c)(2).

Dated this 25th day of March, 2013.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge