**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00256-MSK-KMT

MARIAN G. KERNER, and
RAMONA J. LOPEZ, on behalf of themselves and all others similarly situated,
    Plaintiffs**,**

v.

CITY AND COUNTY OF DENVER, a municipal corporation
    Defendant.

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE**
**FOR PARTIAL SUMMARY JUDGMENT**

---

Defendant City and County of Denver ("City"), moves for summary judgment on Plaintiffs' First Amended Complaint for Damages [Class Action] and Demand for Jury Trial (ECF 26) pursuant to Fed. R. Civ. P. 56. In the alternative, Defendant moves for partial summary judgment on Plaintiffs' First Claim for Relief with respect to class members who applied for certain jobs with the City, and moves for summary judgment on Plaintiffs' Second Claim for Relief, which Plaintiffs voluntarily waived. Finally, Defendant moves for summary judgment on Plaintiffs' prayer for relief for punitive damages.

### I.    INTRODUCTION AND BACKGROUND

This litigation is a Title VII action certified as a class action. Plaintiffs are a class of Black and Latino/Hispanic ("Minority") applicants for employment with the Defendant City. The class members failed to achieve passing scores on AccuPlacer (Read/Placer and/or Write/Placer) and therefore were not eligible to proceed further in the hiring process. Plaintiffs alleged that the

requirement to take the test(s), which have been discontinued, had a disparate impact on Minority applicants for employment.  The First Claim for Relief alleges disparate impact discrimination.  The Second Claim for Relief incorporates the allegations of the First Claim and alleges pattern or practice discrimination.

## II.     CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

### A. Defendant is entitled to Summary Judgment on Plaintiffs' First Claim for Relief (Title VII of the Civil Rights Act of 1964, as amended (Disparate impact discrimination).

#### 1.     Burden of proof and elements

To establish a prima facie case of disparate impact discrimination, plaintiffs must (1) identify the specific identifiable employment practice or policy that has the allegedly disproportionate impact on a protected group and (2) establish causation by offering statistical evidence to show that the practice has resulted in the prohibited discrimination.  *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003); *Stout v. Baxter Healthcare Corp.,* 282 F. 3d 856, 860 (5th Cir. 2002) (quoting *U.S. v. Teamsters,* 431 U.S. 324, 335-336 n. 15 (1977)).  If the plaintiff succeeds in making a *prima facie* showing, the burden of production and persuasion shifts to the defendant.  *Pippin v. Burlington Res. Oil & Gas Co.,* 440 F. 3d 1186, 1200 (10th Cir. 2006) (quoting *Ortega v. Safeway Stores, Inc,* 943 F. 2d 1230, 1242 (10th Cir. 1991)).  If the respondent [defendant] demonstrates that a specific employment practice does not cause the disparate impact, respondent [defendant] shall not be required to prove that such practice is required by business necessity.  42 U.S.C. §2000e-2(k)(1)(B)(ii).

#### 2.     Elements which cannot be proven by Plaintiff

Plaintiffs cannot make a prima facie showing of disparate impact. Plaintiffs' proof of disparate impact from having to pass one or both of the AccuPlacer tests for consideration for employment with the City for certain jobs exclusively relies on the opinions contained in the report of Plaintiffs' statistical expert Robert A. Bardwell, Ph.D. Defendant has previously raised issues surrounding the admissibility of Dr. Bardwell's opinion in the Parties' Joint Motion Under Fed.R.Evid. 702. Defendant anticipates the admissibility of his expert opinions, based on qualifications and methodology, will be subjects of a Rule 702 hearing.

Dr. Bardwell's opinion on disparate impact contained in his report is inadmissible because his methodology is not scientifically valid and not properly applied. For those reasons, his opinions fail to meet Rule 702 standards, even though Defendant concedes he is qualified as an expert in the field of statistics. *Dodge v. Cotter Corp.,* 328 F. 3d 1212, 1221-22 (10th Cir. 2003) (Part of gate-keeper function is to determine that methodology is scientifically valid and properly applied). Because Plaintiffs' purported evidence of disparate impact is not admissible, Defendant is entitled to summary judgment on Plaintiffs' Title VII claim.

Dr. Bardwell's expert report is attached as Exhibit 1. By comparing all applicants for all job classifications, he concluded that the use of the AccuPlacer test had a disparate impact on African-Americans and Latino/Hispanics ("Minorities) and therefore all suffered damages. (Ex. 1 at 11-13). However, Dr. Bardwell did not take into account whether the use of the AccuPlacer tests did not have a disparate impact on minorities for certain job classifications and did not take into account any non-discriminatory factors such as education or employment history, as noted by Defendant's expert, Charles J. Mullin (Ex. 1; Mullin report, Ex. 2 at 20, 25-26; Deposition of Charles J. Mullin, Ph.D. Ex. 3 at 87-89, 92-98, 136-137).

A Colorado district court case squarely on point supporting Defendant's position in this case is *Werede v. Allright Holdings, Inc.,* 2005 WL 2124553 (D. Colo. 2005).  In that case, Judge Walker Miller held Dr. Bardwell's opinions expressed in his expert report on the issue of disparate impact would not be admissible because they violated Fed.R.Evid. 702 as "they are not based upon sufficient fact or data and he did not reliably apply recognized principles or methods to the facts presented."  *Id.* at* 5.  Dr. Bardwell's opinion regarding differences in pay was based solely on a comparison of pay with race and national origin, without including essential variables of skill, education and experience.

That Defendant concedes that Dr. Bardwell may be certified as an expert in the field of statistics does not render his opinions automatically admissible.  Judge Miller stated that a review of Tenth Circuit authority did not disclose a clear bifurcation that would, in effect, admit the expert testimony even if a recognized methodology is questionably applied.  2005 WL 2124553 at *2.  He cited Tenth Circuit authority that statistical evidence may well create an inference of discrimination, but it must cross a threshold of reliability and not "be so flawed as to render it insufficient to raise a jury question."  *Martinez v. Wyoming Department of Family Services,* 218 F. 3d 1133, 1138 (10th Cir. 2000).  He also cited cases from two other circuits: *In re Paoli R.R. Yard PCB Litig.,* 35 F. 3d 717, 745 (3rd Cir. 1994) (any step that renders an analysis unreliable…means expert testimony inadmissible)): *Amorgianos v. Nat'l Passenger Corp.,* 303 F. 3d 256, 257 (2nd Cir. 2002) ("To warrant admissibility…it is critical that an expert's analysis be reliable at every step.").

Judge Miller cited the Tenth Circuit case of *Fallis v. Kerr-McGee Corp.,* 944 F. 2d 743, 746 (10th Cir. 1991), which held that while use of statistical data may create an inference of

4

discrimination, "the statistics must show a significant disparity and create and eliminate non-discriminatory explanations for disparity…. In other words, a plaintiff's statistical evidence must focus on eliminating non-discriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals." 2005 WL 2124553 at *4 (quoting *Fallis,* 944 F. 2d at 746 (Emphasis as in original)).

Judge Miller also stated that the Tenth Circuit has consistently followed this principle to deny admissibility of simple statistical comparisons where the evidence did not focus on eliminating non-discriminatory explanations for the disparity. 2005 WL 2124553 at *4. The Court held further that authorities rejecting statistical evidence that does not address non-discriminatory variables demonstrate that the failure may result in summary judgment, *Cone v. Longmont United Hospital Ass'n, Inc.,* 14 F. 3d 526, 532-533 (10th Cir. 1994); *Rea v. Martin Marietta, Corp.,* 29 F. 3d 1450, 1456 (10th Cir. 1994) and *Doan v. Seagate Technology, Inc.,* 82 F. 3d 974, 979 (10th Cir. 1996).

The district court also held that the authorities cited above (*Cone* and *Doan, supra*) granted summary judgment without imposing any burden on the defendant to present evidence in response to the claimant's insufficiently supported expert opinion. Judge Miller stated, "Contrary to plaintiff's argument, no 'burden-shifting paradigm' is suggested in those cases. Instead, they represent the basic process of a claimant being required to present evidence to establish a case sufficient to reach a jury without imposing on the defendant some independent evidence the plaintiff has failed to provide." 2005 WL 2124553 at *4. The court therefore concluded that the admissibility of plaintiff's expert evidence is not determined by the nature of the records maintained by defendant.

The material facts and the expert offering opinions are the same in *Werede* as in this case. The non-discriminatory variables such as education and work experience, which should have been included in plaintiffs' expert analysis in this case but were not considered, are similar to those excluded in *Werede* and the other cases cited by Judge Miller. In *Cone,* comparisons did not control for occupational dissimilarity. 14 F. 3d at 532-533. In *Rea,* the Tenth Circuit faulted plaintiffs' statistical evidence for failing to eliminate nondiscriminatory explanations, such as lower performance evaluations and rankings. 29 F. 3d at 1456. In *Doan,* the Court of Appeals disapproved of statistical evidence which grouped employees together regardless of specialty or skill. 82 F. 3d at 979.

District Judge David Doty, for the District of Minnesota, excluded Dr. Bardwell's opinions and criticized his methodology in *Coleman II v. Oracle USA, Inc.,* 2011 WL 2746187 (D. Minn. 2011). While the Court excluded Dr. Bardwell's opinions based on statistics, because they were not relevant to a disparate treatment Title VII claim, it stated, "Even if Bardwell's reports were relevant, they are not reliable." 2011 WL 2746187 at *5.

First, the Court held there was no evidence Dr. Bardwell ruled out alternative explanations or considered relevant, race-neutral variables in reaching his conclusions. He noted the reports failed to consider relevant variables other than race, such as skill, education, and experience. 2011 WL 2746187 at *6. Judge Doty also stated that Dr. Bardwell "relied on assumptions to make unsupported conclusions." *Id.* He cited the expert's calculations of the number of application sales managers without accounting for reduction in force or transfers.

As previously noted, in this case Dr. Bardwell failed to consider alternative explanations or relevant race-neutral variables in reaching his conclusion that the difference in pass rates for

6

the AccuPlacer test was attributable to race and national origin.  He also made several assumptions relevant to damages to reach unsupported conclusions regarding duration of work life, beginning salaries and mitigation.  (Ex. 2 at 24-35; Ex. 3 at 172-188, 243-244).

District Judge Nancy Atlas in the Southern District of Texas also excluded Dr. Bardwell's opinions in the recent Title VII case of *Manley v. National ProSource, Inc.,* 2013 WL 3480385 (S.D.Tex. 2013), finding his methodology contained "significant flaws or omissions."  The court reached this conclusion while assuming, but not deciding, that Dr. Bardwell is qualified as an expert in the field of statistics.  2013 WL 3480385 at *7.

In *Manley,* Plaintiff alleged disparate impact race discrimination arising from Defendant's employment practice of denying employment opportunities based on applicants' criminal histories.  Among the fundamentally flawed methodology cited was Dr. Bardwell's failure to take into account the availability of job openings for which an applicant was qualified.  The Court held "If no positions were available requiring the applicant's skill set at the time the applicant applied to ProSource, ProSource would not have been able to refer the applicant even if it wished to do so." 2013 WL 3480385 at *7.  That flaw is similar to this case in which Plaintiffs' expert rendered opinions are based on the number of initially posted positions instead of those actually filled.  (See Ex. 2 at 26-29; Ex. 3 at 105-111).  An applicant cannot be deprived of a position which does not exist.  It is also similar to the fundamentally flawed methodology that lead to his opinion that the use of the AccuPlacer test had a disparate impact on minorities where the statistical evidence for more than half of the job classifications for which the test was administered showed no significant statistical disparity.

7

The district court excluded some of Dr. Bardwell's opinions which are similar to opinions he rendered in this case. These opinions were treating persons with materially different backgrounds as similarly situated. 2013 WL 3480385 at *8; Ex. 2 at 20-21. Finally, Judge Atlas concluded "Dr. Bardwell's opinions have not been shown to be reliable because he has provided no meaningful explanation of how he reached his conclusions." She also stated he "lists variables considered without analytical explanation." *Id.* The same conclusions apply to Dr. Bardwell's assumptions in this case that all Plaintiffs would have worked for 16-17 years with the City as a basis for calculating front pay damages; Plaintiffs would never mitigate their damages based on 25 of 912 class members; and all those hired would start at the midpoint of the salary ranges instead of the actual compensation. (Ex. 2 at 29-35). The principle that "An expert's *ipse dixit* conclusion is an insufficient basis for admissibility." *Id.* (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)), applies equally well to this case.

Because of the multiple methodological flaws, cited most graphically in the *Werede* case, Dr. Bardwell's opinions on disparate impact based on the AccuPlacer tests must not be admitted. There is no indication in Plaintiffs' expert report, notwithstanding his experience in these three cases*,* that Dr. Bardwell made any effort to consider potentially crucial non-discriminatory factors. If they are not admitted, Plaintiffs have failed to advance a prima facie case of disparate impact discrimination; therefore their case must be dismissed as a matter of law.

**B.      Alternatively, Defendant is entitled to Partial Summary Judgment on Plaintiffs' First Claim for Relief as it relates to class members who applied for the following positions with the Defendant City and County of Denver: Administrative Support Assistant I, Administrative Support Assistant V, Agency Support Technician, Animal Control**

**Investigator, Aviation Customer Service Agent, Fingerprint Identification Clerk, Hotline Operator, Human Resources Support Technician, Human Resources Technician, Maintenance Control Technician, Purchasing Technician, Vehicle Impound Clerk and Water Quality Investigator.**

1. <u>Burden of proof and elements</u>

See burden of proof and elements for disparate impact discrimination set forth in Section A. 1., supra.

2. <u>Elements that cannot be proven by the Plaintiffs</u>

Plaintiffs will not demonstrate that the specific employment practice, e.g., the use of the AccuPlacer tests, caused a disparate impact with respect to the 13 job categories listed above because the statistics did not show a statistically significant difference between Minorities and Caucasians hired into those positions. Because use of the test did not cause a disparate impact with respect to hiring, the City is entitled to summary judgment against the Plaintiff class members who applied for those positions.

The parties' experts evaluated the issues of disparate impact and potential lost earnings. As previously noted, Plaintiffs' expert's statistical analysis grouped together all applicants for positions with the City regardless of the positions for which they applied to provide his opinion on statistical disparity. (Ex. 1 at 8-12) Defendant's expert report criticized that aspect of Plaintiffs' expert's analysis, stating that the analysis did not contain information on educational background or work experience of the individuals who took the tests. He stated it was important to control for the jobs sought because: 1) It was likely the applicant pools would differ for different jobs because of different educational backgrounds and experience; 2) the points

required to pass the test varied depending on the job classification sought; and 3) the number of tests required to pass varied by classification title.  (Ex. 2 at 6-7; Ex. 3 at 87-89).  Dr. Mullin criticized Dr. Bardwell's report for assuming all applicants were similarly situated with regard to education and experience and other qualifications and with regard to the conditions required to pass the tests to become eligible for employment.  (Ex. 2 at 20-21; Ex. 3 at 92-98).

As opposed to opining with respect to the class as a whole, Dr. Mullin reviewed comparative data for applicants for all job classifications for which the AccuPlacer examination was required before performing a statistical test to determine statistically significant impact.   For that test, Dr. Mullin explained that a Fisher's Exact test is a commonly accepted statistical test that measures the likelihood of differences in selection rates, which in this case was between Caucasians and Minorities.  (Ex. 2 at 9).  It can then be determined if the outcome observed is statistically significantly different from what is expected.  When observed differences have a probability of random occurrence that is 5% or less, they are usually labeled "statistically significant."  (Ex. 2 at 9 n.8).  Courts and social scientists generally conclude that differences between two groups are statistically significant when the difference has a probability of occurring that is less than 5%.  *Id.*

Dr. Mullin in his report noted that social scientists and statisticians have used criteria of "greater than two or three standard deviations" to categorize "statistically significant" for more than 75 years.  (Ex. 2 at 9 n. 8) (citing Freedman, Pisani and Purves, *Statistics;* and  employment cases such as *Hazlewood School Dist. v. U.S.,* 433 U.S. 299, 308 n. 14 (1977) and *Teamsters v. U.S.,* 431 U.S. 324 (1977).

10

In his report, Dr. Mullin compared the numbers of Minority and Caucasian test takers, the number of Minority and Caucasian passes and statistical probability of random occurrence. Table 2 of the report (Ex. 2 at 11) shows the results for each of the 21 job classifications. He concluded that for 13 of the 21 class titles there were no statistically significant differences in pass rates between Minorities and Caucasians. (*Id.;* Ex. 3 at 85; 140). Those job classifications are listed in bold at subparagraph B, *supra*. Because there was no statistically significant disparity, use of the AccuPlacer test for those positions did not cause a disparate impact between Caucasian and Minority applicants for these job classifications. If a respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity. 42 U.S.C. 2000e-2(k)(1)(B)(ii).

It is appropriate to analyze each job classification separately for the reasons previously set forth in Dr. Mullin's report. The case of *Apsley v. Boeing Co.,* 722 F. Supp 2d 1218 (D. Kan 2010) is also instructive. In that case, the district court held that Plaintiffs failed to show that workers over the age of 40 were adversely impacted by Defendant's policy. It stated that its expert's statistics did not show a statistically significant impact consistently across the individual director groups. 722 F. Supp. 2d at 1247. It further held that the expert analyses showed that only a small number of the twenty-plus director groups had statistically significant disparities and, as a matter of law, the statistical evidence was insufficient proof to show a disparate impact across the class of older employees. *Id. Apsley* supports the proposition that at the very least, statistics should be analyzed across categories and not across the total number of affected employees.

Furthermore, the Tenth Circuit in *Cone* and *Doan* held it was not appropriate to combine occupational groups and those with different training and backgrounds. 14 F. 3d at 532-533; 82 F. 3d at 979. The reasoning in those cases applies as well to this case. Because taking the AccuPlacer tests did not result in statistically significant differences for these positions, that employment practice did not have a disparate impact on applicants for those positions, and summary judgment must be granted to the extent of these 13 job classifications.

**C.     Plaintiffs voluntarily waived their pattern or practice disparate treatment claim, which constitutes Plaintiffs' Second Claim for Relief.**

On July 11, 2014, while discovery was ongoing, Kristen Merrick, one of the counsel for Defendant, wrote Kenneth Padilla, questioning whether Plaintiffs would be pursuing the disparate treatment claim alleged in Count II of the Amended Complaint. On July 22, 2014, Plaintiffs' counsel responded, stating they will not be pursuing any claim for disparate treatment, but only a disparate impact claim. (See exchange of messages, attached as Ex. 4). It should also be noted that class certification was granted on the theory of disparate impact, as contrasted with disparate treatment, and that common issues predominated over individualized ones. (Order Overruling Objections, Adopting Recommendation and Granting in Part Motion to Certify Class, March 25, 2013, ECF 103 at 7-8).

**D.     Defendant is entitled to summary judgment on its Sixth Affirmative Defense: Plaintiffs may not recover punitive damages against Defendant.**

1.     <u>Burden of proof and elements</u>

42 U.S.C. §1981a(b)(1) provides in relevant part, "A complaining party may recover punitive damages under this section against a respondent (other than a government, governmental agency or political subdivision)…

  2.  <u>Elements that cannot be proven by Plaintiffs</u>

The undisputed evidence is that Defendant City and County is a municipal corporation organized under the laws of the State of Colorado (political subdivision).  See, Amended Complaint (ECF 26) at ¶5; Answer to Amended Complaint (ECF 27) at ¶5.  Because the evidence is undisputed, Defendant is a municipal corporation/political subdivision, and Plaintiffs' First and Second Claims alleged Title VII violations, Plaintiffs may not recover punitive damages against Defendant as a matter of law.

## **CONCLUSION**

For the reasons set out in subparagraph A, *supra*, Plaintiffs' evidence to support a claim for Title VII disparate impact discrimination, viewed in the light most favorable to them, is insufficient to establish all of the elements of their claims.  Therefore, Defendant is entitled to summary judgment on Plaintiffs' First Claim for Relief.

Alternatively, Defendant is entitled to partial summary judgment against all Plaintiff class members who applied for the positions of Administrative Support Assistant I, Administrative Support Assistant V, Agency Support Technician, Animal Control Investigator, Aviation Customer Service Agent, Fingerprint Identification Clerk, Hotline Operator, Human Resources Support Technician, Human Resources Technician, Maintenance Control Technician, Purchasing Technician, Vehicle Impound Clerk and Water Quality Investigator for lack of evidence of disparate impact with respect to those positions.

Defendant is also entitled to summary judgment in its favor on Plaintiffs' Second Claim for Relief, Title VII pattern or practice discrimination, based on Plaintiffs' voluntary waiver and counsel's confirmation that the claim would not be pursued.

Finally, pursuant to the applicable statute and undisputed evidence, Plaintiffs may not recover punitive damages under Title VII against a political subdivision, on all causes of action, thereby entitling Defendant to summary judgment on its Sixth Affirmative Defense.

Respectfully submitted this 22nd day of December, 2014.

>FRANKLIN A. NACHMAN, #13,975
>KRISTEN A. MERRICK, #41,031
>Assistant City Attorneys
>
>*s/Franklin A. Nachman*
>Franklin A. Nachman
>Kristen A. Merrick
>Office of City Attorney, Litigation Section
>201 W. Colfax Ave., Dept. 1108
>Denver, Colorado 80202
>Telephone:  (720) 913-3100
>E-mail: dlefiling.litigation@denvergov.org
>*Attorneys for Defendant*
>
>PENDLETON, WILSON, HENNESSEY & CROW, P.C.
>
>BY:  *s/Edward M. Allen*
>Edward M. Allen
>1875 Lawrence Street, Tenth Floor
>Denver, CO 80202-1898
>Telephone:  (303) 839-1204
>E-Mail:  eallen@pwhclaw.com
>*Attorney for Defendant*

**CERTIFICATE OF SERVICE BY CM/ECF**

The undersigned hereby certifies that on the 22nd day of December, 2014, a true and correct copy of the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMMARY JUDGMENT** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address, or as provided to the Court:

Kenneth A. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Padillaesq@aol.com
*Attorney for Plaintiffs*

Joaquin G. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Joaquin@padillalawoffices.com
*Attorney for Plaintiffs*

John Edward Mosby, Esq.
621 17th Street, Suite 2445
Denver, CO 80293
E-Mail: john_mosby@msn.com
*Attorney for Plaintiffs*

Marilyn Cain Gordon, Esq.
7603 Georgia Avenue, N.W., #304
Washington, DC 20012
E-Mail: m.cain.gordon@msn.com
*Attorney for Plaintiffs*

Edward M. Allen, Esq.
Pendleton, Wilson, Hennessey & Crow, P.C.
1875 Lawrence Street, Tenth Floor
Denver, CO 80202-1898
E-Mail: eallen@pwhclaw.com
*Attorney for Defendant*

*s/Deanna Rybal*
Office of the City Attorney

15