**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00256-MSK-KMT

MARIAN G. KERNER, and
RAMONA J. LOPEZ, on behalf of themselves and all others similarly situated,
    Plaintiffs**,**

v.

CITY AND COUNTY OF DENVER, a municipal corporation
    Defendant.

---

**PARTIES' AMENDED JOINT MOTION UNDER
FED. R. EVID. 702 (*DAUBERT*) DETERMINATIONS**

---

The parties, through their undersigned counsel, hereby request a determination regarding the admissibility of opinion testimony from Defendant's Expert Charles J. Mullin, Ph.D., ERS Group, 4901 Tower Court, Tallahassee, FL 32303 with respect to his qualifications as an expert witness in the field of statistics, psychometrics, damage analysis in disparate impact class actions, and in his claimed field of expertise in labor economics. Charles J. Mullin lacks the skill, training, knowledge, or expertise to render expert opinions on psychometrics, pre-employment testing, and disparate impact of protected groups or business necessity and to render opinions on damages to class members and specifically in regard to his damage calculations of the class members in this case. Plaintiffs further object to the methodology used by Charles J. Mullin as a basis for his opinions.

The parties, through their undersigned counsel, hereby request a determination regarding the admissibility of opinion testimony from Plaintiffs' expert Robert A. Bardwell, Ph..D.,

Bardwell Consulting, Ltd, 4801 West Yale Avenue, Denver, CO 80219 with respect to his ultimate opinion that use of the AccuPlacer Test(s) discriminated against Minority (African-American and Latino/Hispanic) applicants on the bases of their race and national origin and his damage calculations of the class members in this case.  Defendant does not object to Dr. Bardwell's qualification as an expert in the field of statistics, but objects to the methodology used as bases for his opinions.

The parties inform the Court that resolution of Rule 702 motions may influence the Court's determination of dispositive motions in this case.

### EXPERT OPINION TESTIMONY OF CHARLES J. MULLIN, Ph.D.

**Opinion 1:**

The preferred methodology for examining selected events is the statistical test known as the Fisher Exact test and what it entails.

**Objections to Opinion 1**:

As applied in this case Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.  The term "entails" is vague and therefore Dr. Mullin's opinion will not assist the trier of fact to understand the evidence or determine a fact in issue.

**Opinion 2**:

When observed differences between groups have a probability of random occurrence that is 5% or less then they are labeled statistically significant.

**Objections to Opinion 2**:

This is a statement of fact.  To the extent that it is an opinion: No objection.

**Opinion 3:**

The appropriate test for determining statistical significance is the two-tailed test and a 5% significance level.

**Objections to Opinion 3:**

Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion. Plaintiffs have no objection that a 5% significance level is appropriate.

**Opinion 4:**

It is appropriate methodology to analyze pass rates on the tests for statistical significance by individual job classifications because the applicant pools differed, the required passing grade scores differed and because the required number of tests to be taken differed depending on the job classification.

**Objections to Opinion 4:**

Dr. Mullin's opinion is not the product of reliable principles and methods or, Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.

**Opinion 5:**

Analyzing comparative pass rates for the 21 job classifications, statistically significant disparities were demonstrated for eight job classifications and were not demonstrated for 13 job classifications.

**Objections to Opinion 5:**

Dr. Mullin's opinion did not reliably apply otherwise reliable principles and methods in formulating his opinion to analyze comparative pass rates for 21 job classifications and his opinion is not the product of reliable principles and methods by dividing employees by job

groups regardless of the homogeneity of these groups. Plaintiffs do not object to Dr. Mullin's opinion that statistically significant disparities were demonstrated for eight job classifications.

**Opinion 6:**

To calculate the impact of the test on loss of hires, the proper methodology is to compare the proportion of minority applicants for each classification to the proportion of minority applicants hired into the eight job classifications for which there were statistically significant disparities. The percentage differences between applicants and hires are multiplied times the number of hires to calculate the shortfall for jobs for each classification.

**Objections to Opinion 6:**

Dr. Mullin's opinion is not the product of reliable principles and methods and/or Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.

**Opinion 7:**

To calculate further the economic loss for the class, the proper methodology is to multiply the percentage differences between minorities among test takers and the minorities among those passing the test times the number of positions actually filled. It is not a proper method to use the number of posted positions to calculate economic loss.

**Objections to Opinion 7:**

Dr. Mullin's opinion is not the product of reliable principles and methods.

**Opinion 8:**

To calculate further lost earnings for the class, the appropriate methodology is to multiply the shortfall numbers times the expected earnings and benefits (for full-time employees), with

4

anticipated wage growth through August 1, 2013. Expected earnings must be based on the actual salaries paid to those hired for those positions and not the median salaries.

**Objections to Opinion 8:**

Dr. Mullin's opinion is not the product of reliable principles and methods and/or Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.

**Opinion 9:**

Lost earnings for the class must take into account the expected duration of employment. The proper methodology is to use historical expected attrition rates for City employees. After five years, only 48% of city employees are expected to still be employed by the City.

**Objections to Opinion 9:**

Dr. Mullin's opinion is not based on sufficient facts and data. Dr. Mullin's opinion is not the product of reliable principles and methods.

**Opinion 10:**

To calculate required mitigation earnings for the class, the proper methodology is to use historical studies of estimates of the times to obtain re-employment and historical studies of the duration of time when earnings will rise to the level of earnings that would have been earned if the class member would have been hired by the City.

**Objections to Opinion 10:**

Dr. Mullin's opinion is not based on sufficient facts and data and Dr. Mullin's opinion is not the product of reliable principles and methods.

**Opinion 11:**

The proper rate to estimate interest for damage calculations is the rate for a United States Treasury Bill.

**Objections to Opinion 11:**

Dr. Mullin's opinion is not the product of reliable principles and methods.

**Opinion 12:**

Educational background and employment experience may impact passage rates for all job classifications.

**Objections to Opinion 12:**

This is a speculative statement of alleged fact. To the extent that it is a claimed opinion, Dr. Mullin's opinion is not based on sufficient facts and data. Dr. Mullin's opinion is not the product of reliable principles and methods and/or Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.

**Opinion 13:**

Based on the above methodologies, the overall estimated potential economic losses to the class are $310, 695.

**Objections to Opinion 13:**

Dr. Mullin's opinion is not based on sufficient facts and data. Dr. Mullin's opinion is not the product of reliable principles and methods and/or Dr. Mullin did not reliably apply otherwise reliable principles and methods in formulating his opinion.

## EXPERT OPINION TESTIMONY OF ROBERT A. BARDWELL, Ph.D.

**Opinion 1:**

Based upon the methodologies described below, the use of the AccuPlacer test by the City and County of Denver had a disparate impact on African American/Black applicants for initial employment and promotion denying them the opportunity to proceed further in the hiring process.

**Objections to Opinion 1**:

This is a legal opinion. Plaintiff's expert lacks sufficient qualifications (skill, training, knowledge or expertise) to render an opinion on this issue.

**Opinion 2:**

Based upon the methodologies described below, the disparate impact upon African American/Blacks was statistically significant at the $1 \times 10^{-15}$ level, which is 7.9 standard deviations using a chi-square, one-tail test.

**Objections to Opinion 2**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained

**Opinion 3:**

Based upon the methodologies described below, the use of the AccuPlacer test by the City and County of Denver had a disparate impact on Hispanic/Latino applicants for initial employment and promotion denying them the opportunity to proceed further in the hiring process.

**Objections to Opinion 3**:

This is a legal opinion. Plaintiff's expert lacks sufficient qualifications (skill, training, knowledge or expertise) to render an opinion on this issue.

**Opinion 4:**

Based upon the methodologies described below, the disparate impact upon Hispanic/Latinos was statistically significant at the $8 \times 10^{-22}$ level, which is 9.5 standard deviations using a chi-square, one-tail test.

**Objections to Opinion 4**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 5:**

Based upon the methodologies described below, the combined disparate impact for both African American/Blacks and Hispanic/Latinos is statistically significant at the $5 \times 10^{-25}$ level[1], which is 10.3 standard deviations using a chi-square, one-tail test.

**Objections to Opinion 5**:

Plaintiff's expert lacks sufficient qualifications (skill, training, knowledge or expertise) to render an opinion on this issue. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

---

[1] This significance level was inadvertently reported incorrectly in my report in Table 1 as $5 \times 10^{-15}$.

8

**Opinion 6:**

A demonstration of statistical significance is achieved at the 0.05, or 5 percent level. This is equivalent to requiring that the disparity is large enough that it would occur by chance no more than 5 percent of the time, or in less than one in 20 nondiscriminatory events.

**Objections to Opinion 6**:

No objection.

**Opinion 7:**

In cases concerning bias in employment decisions a proper method of determining the existence and extent of bias is the chi-square test, which can be used to assess the evidence of race bias in applicant disqualification and provides a measure of the likelihood that the disqualifications were made independent of race.

**Objections to Opinion 7**:

No objection.

**Opinion 8:**

When testing for statistically significant evidence of racial disparities in the presence of a pattern of race disparity, a one-tail test is appropriate since it measures whether the protected class (Blacks or Hispanics) is being disproportionately excluded.

**Objections to Opinion 8**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion.

**Opinion 9:**

Although a one-tail test is preferable in this case, the level of statistical significance is so high that the use of either a one- or a two-tailed test would result in the same conclusion that the

9

AccuPlacer test had a disparate impact in excluding African American and Hispanic applicants for employment with the City and County of Denver.

**Objections to Opinion 9**:

No objection if limited to 8 classifications where statistical significance demonstrated. Otherwise, Plaintiff's expert did not use reliable principles or methodology to reach this opinion and is not qualified to give a legal opinion.

**Opinion 10:**

Disparate impact should be analyzed with respect to all class members and not by each job classification in this case.

**Objections to Opinion 10**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion.

**Opinion 11:**

Analysis of the disparate impact of an unvalidated applicant test involving no subjective determinations of eligibility should include only protected class membership and test outcome and should not include undocumented or theorized external factors, including educational background and job experience

**Objections to Opinion 11**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 12:**

When analyzing disparate impact for employees that may be subdivided into groups, an analytic method that combines the evidence from all groups should be used.

10

**Objections to Opinion 12**:

No objection to the extent this opinion can be discerned.

**Opinion 13:**

The Mantel-Haenszel or peer-group test is a preferred method to analyze disparate impact in multiple groups. The Mantel-Haenszel test or peer group test should be used to determine whether groups are homogeneous, and accordingly if the data indicate a common level of disparate impact in all groups.

**Objections to Opinion 13**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 14:**

The Mantel-Haenszel test is an appropriate test to determine if there is a statistically significant disparate impact across multiple groups, because the Mantel-Haenszel test compares the impact on individual within the same group, and then combines the evidence from all groups in one test.

**Objections to Opinion 14**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 15:**

A Mantel-Haenszel test applied to the data for the different job titles reveals that the disparate impact of the AccuPlacer test across these groups is homogeneous, and therefore it is appropriate to assume a common level of disparate impact for all job classifications.

**Objections to Opinion 15**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 16:**

A Mantel-Haenszel test of the data in this case reveals a level of statistical significance for the observed disparity in test results, comparing only applicants in the same job title, of $10^{-41}$, which is equivalent to 13.5 standard deviations.

**Objections to Opinion 16**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 17:**

If a damages calculation incorporates data on attrition rates for employees with the City of Denver, it should use the actual attrition rates for each year or else account for lower expected attrition rates in years of poor economic growth and high unemployment.

**Objections to Opinion 17**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion.

**Opinion 18:**

If a damages calculation uses national average compensation by job type to calculate mitigation it should account for differences in compensation by race, and must account for the

varying tenure of employees in the average wage computation. National average compensation will include employees at all points in their careers, and thus should be adjusted if used to estimate starting compensation at hire.

**Objections to Opinion 18**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 19:**

A damages calculation should be calculated through the end of an employee's work life when there is evidence that lost earnings are never fully mitigated. An assumption of full mitigation after a fixed number of years must explain why the delay in finding alternate employment does not result in a period of missed wage growth that cannot ever be recaptured over time.

**Objections to Opinion 19**:

Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 20:**

A damages calculation should compute the net present value of lost earnings so that the damages are adjusted for the time value of money, and reflect the most accurate value of lost wages to the claimant at time of the damage calculation.

**Objections to Opinion 20**:

No objection.

**Opinion 21:**

The rate for high-grade municipal bonds is an appropriate value to assume as a discount rate, and has the advantage that it avoids the complexity of accounting for income taxes.

**Objections to Opinion 21**:

Plaintiff's expert did not use reliable principles or methodology to reach this opinion. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Opinion 22:**

Based upon the methodologies described above and the information that Defendant provided to Plaintiffs my damages analysis estimated past damages for all class member Plaintiffs at $8,399,510, and the estimated future damages at $9,954,414.00 for a total damages estimate of $18,353,924. Additional data or information would require the estimate to be reevaluated.

**Objections to Opinion 22**:

Plaintiff's expert's scientific, technical or other specialized knowledge will not help the factfinder understand the evidence or determine a fact in issue. Plaintiff's expert did not use reliable principles or methodology to reach this opinion. Plaintiff's expert did not reliably apply principles or methodology to the facts and data obtained.

**Time Requested for Hearing**

The parties anticipate that the admissibility of the opinions of Dr. Charles J. Mullin can be determined in an 8 hour hearing.

The parties anticipate that the admissibility of the opinions of Dr. Robert A. Bardwell can be determined in a 7 hour hearing.

Respectfully submitted this 23rd day of February, 2015.

                PADILLA & PADILLA, PLLC


                BY:  *s/ Kenneth A. Padilla*
                Kenneth A. Padilla, Esq.
                Joaquin G. Padilla, Esq.
                1753 Lafayette Street
                Denver, Colorado 80218
                E-Mail:  Padillaesq@aol.com
                             Joaquin@padillalawoffices.com
               *Attorneys for Plaintiffs*

                FRANKLIN A. NACHMAN, #13,975
                KRISTEN A. MERRICK, #41,031
                Assistant City Attorneys


                *s/ Franklin A. Nachman*
                Franklin A. Nachman
                Kristen A. Merrick
                Office of City Attorney, Litigation Section
                201 W. Colfax Ave., Dept. 1108
                Denver, Colorado 80202
                Telephone:  (720) 913-3100
                E-mail: dlefiling.litigation@denvergov.org
                *Attorneys for Defendant*

**CERTIFICATE OF SERVICE BY CM/ECF**

The undersigned hereby certifies that on the 23rd day of December, 2014, a true and correct copy of the foregoing **PARTIES' AMENDED JOINT MOTION UNDER FED. R. EVID. 702 (*DAUBERT*) DETERMINATIONS** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address, or as provided to the Court:

Kenneth A. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Padillaesq@aol.com
*Attorney for Plaintiffs*

Joaquin G. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Joaquin@padillalawoffices.com
*Attorney for Plaintiffs*

John Edward Mosby, Esq.
621 17th Street, Suite 2445
Denver, CO 80293
E-Mail: john_mosby@msn.com
*Attorney for Plaintiffs*

Marilyn Cain Gordon, Esq.
7603 Georgia Avenue, N.W., #304
Washington, DC 20012
E-Mail: m.cain.gordon@msn.com
*Attorney for Plaintiffs*

Edward M. Allen, Esq.
Pendleton, Wilson, Hennessey & Crow, P.C.
1875 Lawrence Street, Tenth Floor
Denver, CO 80202-1898
E-Mail: eallen@pwhclaw.com
*Attorney for Defendant*

                                                s/ Kenneth A. Padilla