**CHART OF DISPARITIES BETWEEN DR. BARDWELL'S AND DR. MULLIN'S DAMAGE CALCULATION**

| | **ISSUE** | **DISPARITIES** | **PLAINTIFFS' ANALYSIS & SUPPORT** | **DAMAGES CALCULATION** |
|---|---|---|---|---|
| 1 | Calculate additional shortfall by job class | Dr. Bardwell calculates job category specific damages for all job categories with positive shortfall. Dr. Mullin calculates job category specific damages for eight job categories, and scales up for the remaining 12 categories. | Court 52:15-16 experts will compute the median starting salary in each job classification. Court says that mitigation must be calculated for job classification 52:22-23. Court 52:10-14 "[C]alculation will be done on a classification by classification basis . . ." Court 51:25 - 52:2 First the experts will compute shortfall figures. The Court directs that this be done on a classification by classification basis. Separate job class calculations are important to accurately account for differences in salaries, on call status, salary growth rates, and benefits. | $ 2,182.00 |
| 2 | Last Hire 8/18/2008 | Dr. Bardwell applies the attrition cliff counting from the last relevant hire date. Dr. Mullin applies the attrition cliff counting from the average hire date. | Court 54:3-4 "The experts shall cease making damage calculations at the end of 8.2 years from the <u>last hire date at issue."</u> Trial Exhibit 125 provides all hires at issue. Page 6 of this exhibit demonstrates that Jeffrey Smith was hired as a Fingerprint Identification Clerk on August 18, 2008. This is the last hire date at issue. | $ 76,998.00 |

EXHIBIT 3

| | | | | |
|---|---|---|---|---|
| 3 | 20 weeks unemployment | Dr. Bardwell applies 20 weeks of unemployment prior to mitigation starting as Dr. Mullin did in his damage analysis and workbook that he presented at trial and as adopted by the Court in her ruling. Dr. Mullin applies only 30 days of unemployment in his damage calculation subsequent to the Court's ruling. | Court 34:4-6 As the Court understands it, the parties are in agreement that, as a baseline, Dr. Mullin's approach in calculating mitigation earnings is correct. Court 34:16-17 " . . . the Court understands that Dr. Bardwell eventually agreed to adopt Dr. Mullin's approach . . ." Exhibit 80 Dr. Mullin's report p.17-18 sets forth his methodology & states "The potential lost earnings calculations in this report assume that plaintiffs would obtain alternative employment 20 weeks from the start date of the lost earnings period for each of the classification titles." | $ 195,823.00 |
| 4 | Apply attrition at end of first year | Dr. Bardwell applies attrition after the first year of damage calculation. Dr. Mullin applies attrition before the first year of damages is completed. | Court 53:20 The experts will prorate this figure (initial economic loss) for the first year of the calculation based on a 30-day-after-hiring-date calculation, according to the approach that they agreed upon. Court 53:14-17 And at the end of the first year, the experts will capitalize prejudgment interest on the total outstanding sum for that year, using the interest rate for high-yield government bonds for that year. Court 53:18-25 For subsequent years after the first . . . the shortfall figure that is applied will be reduced by the accumulated graduated attrition factor derived from Dr. Mullin's calculations. | $ 152,773.00 |

| | | | | |
|---|---|---|---|---|
| 5 | Use of actual city benefits | Exhibit 126 identifies city provided benefits in 2008. Dr. Bardwell provides the full amount of Exhibit 126 benefits in the first year of employment. Dr. Mullin reduces the city benefits received in 2008 by approximately 15-20 percent. | Court 52:15-18 the experts will compute the median starting salary in each job classification based on the evidence in the record. They will add the actual median value of benefits paid by Denver in each classification, as shown in the record. Exhibit 126 identifies City provided benefits. The benefit data provided in Exhibit 126 identifies average 2008 benefits paid by job class. The first year of damages occurs predominantly in 2008. The actual dollar value of the benefits in Exhibit 126 should be used in calculating compensation in 2008. | $ 355,329.00 |
| 6 | 90% graduated attrition | Dr. Bardwell applies the attrition cliff after 90 percent cumulative attrition has been reached. Dr. Mullin applies the attrition cliff at the average length of employment with the City of Denver. | Court 25:15-20 Second, the attrition figure also reflects a terminal date for the damage calculation, reflecting a point where the Court is comfortable in assuming that all damages payable to the class members resulting from the disparate impact have been accounted for. Court 51:16-19 That reflects a curve that incorporates the continuing employment up to 90 percent attrition and that is the attrition period that will be used as the cliff attrition point. The Court thus adopted Dr. Bardwell's cliff attrition methodology using the Cox hazard model for his calculation that cliff attrition under the Cox hazard | $ 1,054,720.00 |

| | | | | |
|---|---|---|---|---|
| | | | model would be reached when 90 percent of the hires will have departed from the City employment through attrition, such that the damage calculation can effectively conclude at that time. | |