**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00256-MSK-KMT

MARIAN G. KERNER, and
RAMONA J. LOPEZ, on behalf of themselves and all others similarly situated,
Plaintiffs,

v.

CITY AND COUNTY OF DENVER, a municipal corporation
Defendant.

---

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR ATTORNEY'S FEES AND EXPENSES [ECF #245]**

---

Defendant, by its counsel, respectfully submits the following Response to Plaintiffs' Second Motion for Attorney's Fees and Expenses [Doc. # 245].

## I. INTRODUCTION

Plaintiffs seek the recovery of attorneys' fees and expenses in the amount of $1,712,351.99. This request includes $1,550,195 in attorneys' fees and paralegal fees, as well as $162,120.99 in expenses. Plaintiffs maintain these fees and expenses are reasonable and were necessarily incurred in the prosecution of their case. For the reasons set forth below, Defendant disputes the reasonableness of Plaintiffs' fee and expense request and objects to Plaintiffs' Second Motion for Attorney's Fees and Expenses.

## II. AS A THRESHOLD MATTER, THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR FEES AND EXPENSES IN ITS ENTIRETY BECAUSE IT IS UNTIMELY AND PLAINTIFFS FAILED TO ESTABLISH EXCUSABLE NEGLECT

Plaintiffs' Motion for Attorney's Fees and Expenses was due, with an extension, on August 5, 2016. After making a series of errors including failure to confer with opposing counsel as required pursuant to D.C.COLO.LCivR 7.1(a), attempting to supplement a denied motion, and attempting to amend a denied motion, Plaintiffs filed an opposed Motion for Leave to File a Second Motion for Attorney's Fees and Expenses on October 7, 2016. [ECF #243.][1] On October 12, 2016, before Defendant had an opportunity to respond that the motion was untimely and Plaintiffs failed to establish excusable neglect, the Court granted Plaintiffs' motion. [ECF #244.] Plaintiffs filed their Second Motion for Attorney's Fees and Expenses on October 14, 2016 [ECF #245], more than two months after the August 5, 2016 deadline. Plaintiffs did not even mention excusable neglect, let alone set forth any valid reasons or arguments why an untimely motion for attorneys' fees was the result of excusable neglect. To be sure, Plaintiffs' series of missteps over the course of two months during which time they could not figure out how to cure the deficiency in their original fees motion[2] does not constitute excusable neglect.

"Under Federal Rule of Procedure 6(b)(2), a district court 'for cause shown may at any time in its discretion' consider an untimely motion for costs and fees under Rule 54(d)(2) 'where the failure to' timely file 'was the result of excusable neglect….'" *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005) (quoting Fed. R. Civ. P. 6(b)(2)) (district court properly rejected

---

[1] Plaintiffs' characterization of the parties' conferrals in ECF #243 is inaccurate and disputed.

[2] Plaintiffs' counsels' actions belie the declarations of K. Padilla and J. Padilla touting their skill and expertise after practicing for 20 and 46 years respectively.

plaintiffs' excusable neglect argument). "It is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." *Id.* at 1238. The U.S. Supreme Court set forth four factors to be considered in the flexible excusable neglect analysis: 1) danger of prejudice to the nonmoving party; 2) length of the delay and its potential impact on judicial proceedings; 3) reason for the delay, including whether it was in the control of the movant; and 4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 395 (1993). "The four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (reversing the district court and holding "garden variety attorney inattention" does not constitute excusable neglect). Although *Pioneer* did not involve the interpretation of the precise rule at issue in this case, the Tenth Circuit has found it highly persuasive in interpreting other rules that include "excusable neglect" language. *United States v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004).

Applying the *Pioneer* factors, the danger of prejudice to the Defendant is low; the delay of more than two additional months, while significant, does not have a great impact on the proceedings; and there is no evidence Plaintiffs acted in bad faith. However, the third factor – the reason for the delay and whether it was in the control of the movant – weighs heavily against Plaintiffs. The delay began when Plaintiffs failed to confer in accordance with D.C.COLO.LCivR 7.1(a) before filing their motion for fees. After the Court denied Plaintiffs' motion for this deficiency, Plaintiffs continued the delay by attempting to file a two-page conferral as a "supplement" to the motion that was denied. The delay continued when Plaintiffs next sought leave to "amend" the motion that was denied. The delay continued when Plaintiffs sought leave

to file a Second Motion for Attorney's Fees and Expenses. The reason for the delay was entirely within Plaintiffs' control when they committed error after error. While only one factor weighs against a finding of excusable neglect, it is the most important factor.

In *Kyle v. Campbell Soup Co.*, the District Court applied the *Pioneer* analysis and found that counsel acted in good faith, he had not demonstrated professional incompetence, and Campbell Soup would not be prejudiced by the enlargement of time. *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 931 (9th Cir. 1994), *as amended on denial of reh'g* (Apr. 8, 1994). Thus, the District Court granted Plaintiff's motion on the basis that these errors amounted to excusable neglect under Fed. R. Civ. P. 6(b). *Id.* at 931-32. However, the Ninth Circuit reversed based on the fault in delay factor, holding there was no excusable neglect and the motion for attorneys' fees should be denied as untimely. *Id.* Likewise, in *United States v. Torres*, the Tenth Circuit held the District Court abused its discretion in finding excusable neglect. *Torres*, 372 F.3d at 1162-63. Although three of the *Pioneer* factors weighed in favor of a finding of excusable neglect, the most important factor, fault in the delay, weighed against a finding of excusable neglect. *Id.*

In their Motion for Leave to File a Second Motion for Attorney's Fees and Expenses, Plaintiffs argue they are entitled to fees and policy considerations support the award of fees. The plaintiff in *Mills v. Prudential Ins. Co. of America* likewise argued that "the policy considerations underlying Colorado's fee-award statute outweigh the policy considerations animating Rule 54. This also has no legal bearing on the question of excusable neglect. As with the argument that Plaintiff is not prejudiced, this is at best merely 'an appeal to fairness' that does not address the more important question of why Mills could not file his motion timely." *Mills v. Prudential Ins.*

*Co. of Am.*, No. 11-cv-02127-DME-CBS, 2012 WL 2590686, at *4 (D. Colo. July 5, 2012) (denying motion for leave to file untimely motion for attorneys' fees).

Because Plaintiff's Second Motion for Attorney's Fees and Expenses is untimely and Plaintiffs failed to establish excusable neglect, this Court should deny Plaintiffs' motion in its entirety.

## III. LEGAL STANDARD

Plaintiffs bear the burden of establishing their entitlement to a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The starting point to determine whether a request for attorney fees is reasonable is by calculation of the "lodestar amount," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433; *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

A "reasonable rate" is the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). As the party requesting fees, it is Plaintiff's burden to show that the requested rates are in line with those prevailing in the community. *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). To meet this burden, Plaintiff is required to produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984).

In addition to bearing the burden of establishing its entitlement to fees, a plaintiff must also demonstrate "the appropriateness of the hours expended." *Morris v. Potter*, No. 06-cv-00432-MSK-CBS, 2008 WL 5381475, at *5 (D. Colo. Dec. 22, 2008) (citing *Hensley v. Eckerhart*, 461

U.S. 424, 437 (1983)). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Thus, a plaintiff's failure to exercise billing judgment is another fact which may support the reduction of an award. See *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995) (upholding the reduction of a fee award on the grounds that the plaintiff's request included excessive hours and unnecessary services in light of the claims at issue.)

Other factors courts have considered in determining the reasonableness of attorneys' fees include, but are not limited to, whether the tasks are those for which an attorney would normally bill a client, duplication of effort by multiple attorneys, the clarity of an attorney's time record, and the complexity of the case. *Morris,* 2008 WL 5381475, at *7. Moreover, practices such as vague time entries, which do not reveal the precise activities for which time is being billed, are inadequate to support a request for attorneys' fees. *Robinson*, 160 F.3d at 1284.

## IV. THE COURT SHOULD REDUCE PLAINTIFFS' ATTORNEYS' FEES BECAUSE THEY ARE EXCESSIVE

Although it disagrees with many of the contentions made by Plaintiffs in their misleading ten-page Statement of Facts, it will not take the time to painstakingly contradict each.[3] The Court is intimately familiar with the facts of this lawsuit and its procedural history.

[3] Defendant further takes issue with Plaintiffs' counsels' mischaracterization of the reported conferrals between counsel. Defendant's counsel did not refuse to discuss Plaintiffs' Motion. Rather, Defendant's counsel advised Plaintiffs' counsel that they were not in a position to substantively discuss their objections until additional work and analyses could be performed. The billing records are hundreds of pages in length and, like Plaintiffs, Defendant retained an expert to opine as to the reasonableness of Plaintiffs' hourly rates as well as the reasonableness of the hours.

While it is true that the lawsuit was pending for five years, counsel's billing records confirm there was very little activity during multiple months over this period of time. Furthermore, as will be discussed more fully below, Plaintiffs requested, and were granted, multiple extensions of time which delayed the proceedings. Contrary to Plaintiffs' contention, the number of CM/ECF filings are in no way a reflection of the complexity of the case. Nearly half the filings related to non-substantive motions and scheduling. In addition, the vigor with which Defendant's counsel acted was nothing out of the ordinary. Finally, in spite of the sizeable damages claimed by Plaintiffs, discovery was not unduly burdensome and the issues tried before the Court were primarily limited to the appropriate measure of damages and the aggregation v. disaggregation of less than 8% of the class members.

Defendant recognizes that the Court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a "request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437. See also, *Fox v. Vice,* 563 U.S. 826, 838 (2011) (the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). With the foregoing in mind, Defendant will focus and limit its objections to examples of why the Court should reduce the attorney's fees being claimed by Plaintiffs. Ultimately, Defendant contends that the total number of hours billed by Plaintiffs' counsel should be reduced by thirty percent (30%) and counsels' claimed hourly rates should also be reduced.

### A. The Hours Plaintiffs Purport to Bill Are Excessive and Unreasonable

As noted above, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. See *Mann*, 46 F.3d at 1062 (upholding the reduction of a fee award on the grounds that the plaintiff's request included excessive hours and unnecessary services in light of the claims at issue.)

Here, counsels' billing records are replete with entries that demonstrate excessive hours were spent on certain tasks, duplication of effort was frequent between Mr. Kenneth Padilla and Mr. Joaquin Padilla (e.g., both counsel reviewed many of the same emails, filings and court orders[4]), time spent by lead counsel that should have been delegated to others, and Plaintiffs' counsels' own zealousness often unnecessarily broadened and intensified the litigation. By way of example, Defendant offers the following for the Court's consideration:

> 1. Between January 2012 and March 2012, Messrs. Kenneth Padilla and Joaquin Padilla billed roughly $60,000 in fees for attempting to contact, contacting and obtaining information for declarations (efforts which resulted in 29 declarations). The described tasks essentially amounted to intake/contact that should have been delegated to a paralegal, other staff or a retained third party – as is often done in class action litigation. During this same time frame, Mr. Leroy Moya, counsel's paralegal, had no entries related to this work. Clearly billing at a rate of $500/hour for these relatively simple and straightforward efforts was excessive and should have been delegated to others.
>
> 2. Over a one-week period of time in July, 2012, Mr. Kenneth Padilla billed $12,600 for legal research on class certification. In light of Counsel's alleged expertise with class action litigation and employment/disparate impact cases, this time is excessive.
>
> 3. Throughout every hearing, each brief submitted by Plaintiffs, during the Rule 702 Daubert hearing, and through trial, Counsel seemingly squeezed out every minute of time

[4] See, e.g., K. Padilla and J. Padilla entries on 2/15/12. K. Padilla entered "review order granting motion to reset Doc #49 (.1)" and J. Padilla entered "receive and review Minute Order entered by Court on February 15, 2012 granting Defendant's motion to continue Hearing on Motions and Scheduling Conference (0.1)." This is the same brief minute order they both reviewed and billed. [ECF #49.]

allotted and utilized every page permitted to present Plaintiffs' arguments. Often, these efforts were unnecessary, redundant and excessive.

4. Messrs. Kenneth and Joaquin Padilla, along with Mr. Moya, spent 28.5 hours of time preparing the Merits Scheduling Order and attending the Scheduling conference. These tasks should have taken no more than five hours. See Exhibit A, Affidavit of J. Andrew Nathan, at ¶ 15(b).

5. Plaintiffs' counsel spent a total of 31.9 hours drafting the Notice of Class Certification [ECF #104-1], which is an excessive amount of time and should have taken no more than one half the time. See Exhibit A, ¶ 15(c).

6. Mr. Kenneth Padilla spent 70.6 hours of time, and a billed amount of $35,300, evaluating Dr. Mullin's report and preparing for his deposition. Although the reports and workbooks of the expert witnesses contained some complexities, this constitutes an excessive amount of time for a deposition that lasted only 7 hours.

7. Counsel spent 66 hours of combined time preparing the responses and supplemental responses to Defendant's written discovery. Those responses were limited to 26 class members and, in part, included boilerplate answers. Given the limited number of respondents, as well as the work that could have been delegated to Mr. Moya, this request is excessive.

8. Counsel spent 266.6 hours of combined time preparing *Daubert* briefing, preparing for the *Daubert* hearing and attending the *Daubert* hearing. This amounts to nearly two months of full time work for many attorneys, with no other work being billed. Moreover, Plaintiffs degree of success was limited to a single opinion of Dr. Mullin's being excluded. Furthermore, Joaquin Padilla did not give the opening statement, closing argument, nor did he examine any witness. In effect, he billed for observing the two-day hearing. Pursuant to the opinions of J. Andrew Nathan, this work should have taken no more than half the time claimed by counsel. Exhibit A, ¶ 15(e).

9. Plaintiffs' counsel spent a total of 130.9 hours on Plaintiffs' Motion for Partial Summary Judgment briefing and 164.6 hours on responding to Defendants' summary judgment briefing. This amount of time is probably double what would have been expected (Exhibit A, ¶ 15(f)) and resulted in limited success - only defeating Defendant's Motion.

10. Plaintiffs' counsel spent 217.8 hours on researching, briefing and attending a hearing regarding disparate impact, as well as research and briefing on the right to a jury trial in a title VII disparate impact case. Once again, this time was excessive and should have been performed in no more than half the time. Exhibit A, ¶ 15(g).

11. Plaintiffs' counsel, Mr. Kenneth Padilla, spent a total of 27 hours preparing the final Pre-Trial Order and attending the Pre-Trial Conference, which substantially exceeds what would have been expected and what should have been billed. Exhibit A, ¶ 15(i).

12. Plaintiffs' counsel spent almost 72 hours researching and briefing the recovery of attorneys' fees and costs in Title VII cases, which was an excessive amount of time. Exhibit A, ¶ 15(j). The 72 hours billed amounts to nearly ten days of full time work, while attending to no other tasks.

Plaintiffs claim they "diligently exercised billing judgment." (Plaintiffs' Second Motion for Attorney's Fees and Expenses, p. 25.) Specifically, Plaintiffs claim "a good faith effort has been made to remove duplicative time entries, and work determined to be performed inefficiently or unnecessarily has been reduced or eliminated." *Id.* However, the billing records Plaintiffs filed are so excessive they are offensive, and these are purportedly the *reduced* version *after* Plaintiffs exercised billing judgment. *See, e.g., Crapnell v. Dillon Companies, Inc.*, No. 14-cv-01713-KLM, 2015 WL 4484469, at *5 (D. Colo. July 22, 2015) ("These time entries are clearly excessive and unreasonable given the length and content of the reply. In fact, they are so excessive that they are offensive to the Court.").

In addition to the foregoing examples, and as briefly noted above, the length of time the matter was pending and the number of CM/ECF filings are not indicative of the complexity of the case or the work required. Pursuant to the Affidavit of J. Andrew Nathan, roughly 92 of the 244 CM/ECF filings related to requests for and orders on extensions of time, appearances and changes of address, as well as various scheduling conferences, scheduling orders, amended scheduling orders and resetting of scheduling conferences. Exhibit A, ¶ 16.

Similarly, the length of time the case was pending, from filing to judgment, was in large part related to the number of extension of time that were requested, most of which were requested by Plaintiffs. Exhibit A, ¶ 17. The five-year duration should not be considered a reflection of

either the complexity of the case or a justification for the roughly $1.5 million dollars in fees being requested by counsel. Likewise, Plaintiffs' allegation that the case was complex or vigorously defended because of the total number of attorneys who were assigned this case at some point during its five-year duration is unavailing. At no point did Denver have five attorneys working on this case. Plaintiffs themselves have four counsel who entered appearances on their behalf. Moreover, Plaintiffs' contention that Defendant had two paralegals at the 702 Daubert hearing and throughout the trial is simply false.

Finally, although the courts have been clear that there is no requirement that the amount of fees awarded to a prevailing party be proportional to the amount of the recovery, "the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded." *City of Riverside v. Rivera,* U477 U.S. 561, 574 (1986), cited in the case of *Major John Michael Scott v. City & County of Denver,* 2014 WL287558 (D. Colo. Jan. 27, 2014); *Hensley,* 461 U.S. at 440 (the extent of a plaintiffs' success is a crucial factor in determining the proper amount of an award of attorney's fees). Here, although Plaintiffs were clearly the prevailing party, the amount the court awarded was less than one tenth of the $18,000,000 claimed by Plaintiffs during their opening statement.

**B. The Hourly Rates Billed Are Unreasonable in Light of the Prevailing Market Rates of Those with Substantially Similar Experience**

The hourly rates used by Plaintiffs in calculating the lodestar figure are unreasonably high in light of prevailing rates in the Denver legal community for similar work. Specifically, Plaintiffs request $500/hour for Kenneth Padilla and $375/hour for Joaquin Padilla.

A plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895 n. 11. A district judge may consider his or her "own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Lippoldt v. Cole,* 468 F.3d 1204, 1225 (10th Cir. 2006).

This Court recently delineated the appropriate hourly rate to be applied in cases of this nature. In *Scott v. Denver,* Civil Action No. 12-cv-00053-MSK-BNB, a case involving a fee request by plaintiffs' counsel with respect to Americans with Disabilities Act claims, this Court determined that rates of $440 per hour for an attorney with 20 years' experience and $290 per hour for an attorney with eight years 'experience "sit at the very outer edge of what might be considered 'reasonable' in the Denver market." See Opinion and Order Granting in Part and Denying in Part Motion for Attorney Fees, at 4, ECF 154, *Scott v. Denver,* Civil Action No. 12-cv-00053-MSK-BNB. This decision was based, in part, on the holding in *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238 (D. Colo. 2013), that the prevailing rate for experienced litigators in Denver approached $400.00 per hour with $450.00 per hour representing the maximum hourly rate that could be considered for lead trial counsel. *Id.* at 1258.

Moreover, while counsel may have many years of experience, their billing records and the excessive amount of time spent researching class action and disparate impact case law belie the suggestion that either are experts in the relevant fields such that their hourly rates warrant the outer edge of what might be considered reasonable in the Denver market. While some research was warranted, the total number of hours spent researching case law suggests that neither counsel held a high degree of expertise in the subject matter of this litigation.

Based upon the foregoing, Defendant requests that the court reduce the hourly rate for Mr. Kenneth Padilla, lead counsel in this case, to $400.00/hour, and further requests that the court reduce the hourly rate for Mr. Joaquin Padilla to $250/hour. In further support of this request for the reduction of counsel's hourly rates, see Exhibit A, ¶¶ 10-14.

## V. THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR AN ENHANCEMENT OF THE ATTORNEY FEES

In addition to seeking an unwarranted and excessive hourly rate for counsel, Plaintiffs seek an enhancement. Plaintiffs maintain that the Court should take into consideration twelve factors outlined in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). However, in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), the Supreme Court expressly rejected utilizing this methodology and ruled that enhancements are only warranted in rare and exceptional circumstances.

The Court in *Perdue* cited six important rules that led to its decision to deny an enhancement:

> First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. See *Delaware Valley I*, 478 U.S., at 565, 106 S.Ct. 3088 ("[I]f plaintiffs ... find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied"); *Blum, supra*, at 897, 104 S.Ct. 1541 ("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys" (ellipsis, brackets, and internal quotation marks omitted)). Section 1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys." *Delaware Valley I, supra*, at 565, 106 S.Ct. 3088.
>
> Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. See *Dague, supra*, at 562, 112 S.Ct. 2638; *Delaware Valley I, supra*, at 565, 106 S.Ct. 3088; *Blum, supra*, at 897, 104 S.Ct. 1541;

> see also *Gisbrecht, supra*, at 801–802, 122 S.Ct. 1817. Indeed, we have said that the presumption is a "strong" one. *Dague, supra*, at 562, 112 S.Ct. 2638; *Delaware Valley I, supra*, at 565, 106 S.Ct. 3088.
>
> Third, although we have never sustained an enhancement of a lodestar amount for performance, see Brief for United States as Amicus Curiae 12, 17, we have repeatedly said that enhancements may be awarded in " 'rare' " and " 'exceptional' " circumstances. *Delaware Valley I, supra*, at 565, 106 S.Ct. 3088; *Blum, supra*, at 897, 104 S.Ct. 1541; *Hensley*, 461 U.S., at 435, 103 S.Ct. 1933.
>
> Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," *Delaware Valley I, supra*, at 566, 106 S.Ct. 3088, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation, see *Dague, supra*, at 562–563, 112 S.Ct. 2638; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 726–727, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*) (plurality opinion); *Blum*, 465 U.S. at 898, 104 S.Ct. 1541. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors "presumably [are] fully reflected in the number of billable hours recorded by counsel." *Ibid.* We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar "[b]ecause considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." *Delaware Valley I, supra*, at 566, 106 S.Ct. 3088.
>
> Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant. *Dague, supra*, at 561, 112 S.Ct. 2638; *Blum*, 465 U.S., at 901–902, 104 S.Ct. 1541.
>
> Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award. *Id.*, at 899, 901, 104 S.Ct. 1541 (An enhancement must be based on "evidence that enhancement was necessary to provide fair and reasonable compensation"). This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

*Id.* at 1672 – 1674. Thus, although an enhancement may be appropriate in rare and exceptional circumstances, those circumstances do not exist in this case. Unjustified enhancements that only provide additional profit to attorneys are not consistent with Section 1988. *Id.*

It is also noteworthy that, in spite of counsel's contentions to the contrary, this was not an unpopular or particularly risky case. First, on July 8, 2008, the EEOC found "reasonable cause to believe that there is a violation of Title VII in that Respondent failed to conduct a validity test on the Accuplacer test used in its employment process. Furthermore, the statistical analysis also revealed that the above-mentioned test discriminated against Hispanic/Latino male applicants." (Exhibit B, EEOC Finding.) In 2008, the EEOC found cause in only 4.6% of charges.[5] Thus, the EEOC's finding suggested the case had merit. Second, Plaintiffs' counsel routinely sues municipalities for alleged civil rights violations, including Denver, on behalf of their clients. They did not risk losing any business by virtue of suing Denver for disparate impact discrimination. See Exhibit A, Affidavit of J. Andrew Nathan, at ¶ 19.

## VI. THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR REIMBURSEMENT FOR POSTAGE, ADR FEES AND THE EXPERT FEES OF MASTEN AND SALZBERG

Plaintiffs seek reimbursement for costs identified in the "other costs" section of their Bill of Costs. Specifically, Plaintiffs request:

- Printing in the amount of $2,105.21
- Postage in the amount of $765.69
- ADR fees in the amount of $2,691
- Expert Fees in the amount of $133,124

[5] https://www.eeoc.gov/eeoc/statistics/enforcement/all.cfm

### A. Plaintiffs Were Awarded Printing Costs

Edward Butler, the Court Clerk, awarded Plaintiffs $2,105.21 in copying and printing costs. Defendant does not challenge that award.

### B. Postage is Not Recoverable

In their Bill of Costs, Plaintiffs sought $765.69 for postage. The parties stipulated to $670.70 for postage for the first and second notices to the class. Plaintiffs seek to recover two additional postage expenses. First, Plaintiffs claim they spent $19.99 for overnight correspondence to Alan Salzberg, who Plaintiffs called as an expert witness in the Daubert hearing. Second, Plaintiffs claim they spent $75.00 on postage for unspecified items throughout the course of the case.

Edward Butler, Clerk of Court, denied Plaintiffs' costs for postage, as postage is not included in 28 U.S.C. § 1920 and is not recoverable as a cost. 28 U.S.C. § 1920; *Avalanche Equip., LLC v. Williams-S Co., LLC,* No. 13-cv-02827-NYW-MJW, 2015 WL 3635861, at *3 (D. Colo. June 11, 2015) ("postage and courier services are simply part of the overhead costs."). Plaintiffs do not cite any authority for awarding postage expenses to the prevailing party. Thus, Plaintiffs request for $94.99 for postage for an overnight package to Dr. Salzberg and other unspecified mailings should be denied.

### C. ADR Fees Are Not Recoverable Where The Parties Agreed to Split the Cost

Plaintiffs' request for mediation fees in the amount of $2,691.00 should be denied. "To be sure, mediation fees are not covered by [28 U.S.C. § 1920] and costs associated with a mediation are not recoverable under that statute." *Bell v. Turner Recreation Comm'n,* No. 09-2097-JWL, 2010 WL 126189, at *9 (D. Kan. Jan. 8, 2010). In this case, the parties split the cost of a private

mediator as evidenced by the invoice Plaintiffs submitted, which states "2 Party Split" in the description column. [ECF #232, p. 38.] At the bottom of the invoice, it states "This bill is for your share of the total charges. It has been split between the number of parties referenced above." *Id.* As Judge Matsch stated, "[t]he Plaintiff is not entitled to recover his share of the cost of mediation because the parties agreed to split the mediator's fees and there is no evidence that the Plaintiff reserved the right to seek recovery of his portion of those fees." *Adamscheck v. Am. Family Mut. Ins.*, No. 13-cv-02074-RPM, 2015 WL 1379044, at *5 (D. Colo. Mar. 24, 2015).

In order to recover, Plaintiffs would have to provide evidence – for instance, the mediation agreement – indicating it reserved the right to seek recovery of this fee under that agreement. *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 78 F. Supp. 3d 1307, 1324 (D. Colo. 2014) (denying mediation costs where the parties split the mediator fees) (citing *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1193 (Colo. App. 2011) (providing an agreement between the parties to pay half of the mediator's fees precluded the court from awarding these fees as costs when a party failed to provide evidence that it reserved the right to seek recovery of its portion of the mediation fees). Plaintiffs can produce no such evidence, because the parties never agreed that Defendant would pay for the cost of mediation. Accordingly, Plaintiffs' request for the recovery of the ADR expenses should be rejected by the Court.

**D. Expert Fees**

Finally, Plaintiffs seek the recovery of expenses related to their expert witnesses. Although Defendant will not contest the claimed expenses related to the work of Bardwell Consulting, Defendant contends that the expenses related to the work of Salt Hill Statistical Consulting and Masten Valuation should be rejected by the Court.

"In any action or proceeding under this subchapter the court, in its discretion, **may allow** the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including **expert fees**) as part of the costs . . .." [emphasis added] 42 U.S.C. § 2000e–5(k). Awards for both attorney's fees and expert witness fees are governed by the same standard. *See Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO (AFSCME) v. County of Nassau*, 96 F.3d 644, 645 (2d Cir. 1996).

Dr. Salzberg and Lori Masten were retained exclusively for the purposes of buttressing the opinions of Dr. Bardwell and for challenging the methodology offered by Dr. Mullin during the Rule 702 hearing. Neither Dr. Salzberg nor Ms. Masten offered any opinions upon which the Court relied during trial, and neither added any value to the Plaintiffs' case. Although Plaintiffs contend that these experts were necessary based on the Court's admonition, cited on page 33 of its Second Motion for Attorney's Fees and Expenses, neither provided convincing evidence that the methodology applied by Dr. Mullin was unreliable. Ultimately, these two witnesses were not necessary to the case and were not reasonable expenses incurred by Plaintiffs. Moreover, because the efforts of Dr. Salzberg and Ms. Masten did not result in a successful outcome on the hearing for which they were retained, the expenses related to their work should be rejected by the Court.

## VII. CALCULATION

Defendant proposes attorneys' fees of no more than $894,443 based on the foregoing law and argument, and attached affidavit. To arrive at this figure, Defendant reduced the total hours K. Padilla and J. Padilla claimed by thirty percent, and Defendant reduced the hourly rates for K. Padilla and J. Padilla to $400/hour and $250/hour respectively. Defendant did not reduce Mr.

Moya's claimed hours or hourly rate. The table below shows Plaintiffs' claimed hours and hourly rate, and Defendant's proposed reductions:

| | **Hours Claimed** | **Rate Claimed** | **Total Claimed** | **Reduced Hours** | **Reduced Rate** | **Reduced Total** |
|---|---|---|---|---|---|---|
| **K. Padilla** | 2,359.6 | $500/hr | $1,177,400.00 | 1,651.72 | $400/hr | $660,688 |
| **J. Padilla** | 737.2 | $375/hr | $276,450 | 516.04 | $250/hr | $129,010 |
| **L. Moya** | 698.3 | $150/hr | $104,745 | Not reduced | Not reduced | $104,745 (Not reduced) |
| **TOTAL** | | | **$1,550,195** | | | **$894,443** |

## VIII. CONCLUSION

For all the reasons stated herein and expressed in the attached affidavit, Defendant respectfully requests that the Court substantially reduce the amount of fees requested and deny Plaintiffs' Motion for expenses for postage, mediation expenses, and expert fees of Salt Hill and Masten Valuation. Defendant also respectfully requests that the Court deny Plaintiffs' attorneys' fees for failure to establish excusable neglect for their untimely filing or, in the alternative, reduce Plaintiffs' hourly rate to $400/hour for Mr. Kenneth Padilla and $250/hour for Mr. Joaquin Padilla,

and further reduce the number of hours billed by Plaintiffs' counsel by thirty percent (30%) for total fees of no more than $894,443.

Respectfully submitted this 7th day of November, 2016.

KRISTEN A. MERRICK. #41031
Assistant City Attorney

*s/ Kristen A. Merrick*
Kristen A. Merrick
Office of City Attorney, Litigation Section
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202
Telephone: (720) 913-3100
E-mail: dlefiling.litigation@denvergov.org
*Attorney for Defendant*

*s/ Edward M. Allen*
Edward M. Allen, Esq.
Allen & Curry, P.C.
1125 17th Street, Suite 1275
Denver, CO 80202
eallen@allen-curry.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE BY CM/ECF

The undersigned hereby certifies that on this 7th day of November, 2016, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND MOTION FOR ATTORNEY'S FEES AND EXPENSES [ECF #245]** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address, or as provided to the Court:

Kenneth A. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Padillaesq@aol.com
*Attorney for Plaintiffs*

Joaquin G. Padilla, Esq.
Padilla & Padilla, PLLC
1753 Lafayette Street
Denver, Colorado 80218
E-Mail: Joaquin@padillalawoffices.com
*Attorney for Plaintiffs*

John Edward Mosby, Esq.
621 17th Street, Suite 2445
Denver, CO 80293
E-Mail: john_mosby@msn.com
*Attorney for Plaintiffs*

Marilyn Cain Gordon, Esq.
7603 Georgia Avenue, N.W., #304
Washington, DC 20012
E-Mail: m.cain.gordon@msn.com
*Attorney for Plaintiffs*

Edward M. Allen, Esq.
Allen & Curry, P.C.
1125 17th Street, Suite 1275
Denver, CO 80202
eallen@allen-curry.com
*Attorney for Defendant*

*s/ Veronica Blea*
Legal Secretary
Office of the City Attorney